THE STATE OF OHIO, APPELLANT, *v.* KAMEL ET AL., APPELLEES.

[Cite as State *v.* Kamel (1984), 12 Ohio St. 3d 306.]

(No. 83-1827—Decided August 1, 1984.)

*Mr. James R. Unger,* prosecuting attorney, and *Mr. Dale T. Evans,* for appellant.

*Messerman & Messerman Co., L.P.A., Mr. Gerald A. Messerman* and *Mr. C. Roland Centrone,* for appellees.

J. P. CELEBREZZE, J. In reversing the judgment of the trial court, the court below relied upon four separate grounds. Appellant now asks us to review each of these issues.

## I

It is a well-settled policy of law that, while this court will not ordinarily weigh the evidence adduced in a criminal matter, it will do so in order to ascertain whether there is sufficient evidence which, if believed, would support a finding of guilt beyond a reasonable doubt. *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, 159 [66 O.O.2d 351]; *State* v. *Jacobozzi* (1983), 6 Ohio St. 3d 59, 61. It is also established that where proof of an essential element of a crime is based exclusively on circumstantial evidence, such evidence must be consistent only with a theory of guilt and irreconcilable with any reasonable theory of innocence. *State* v. *Kulig, supra,* at 160; *State* v. *Sorgee* (1978), 54 Ohio St. 2d 464, 465 [8 O.O.3d 452].

At the trial of the instant matter, the evidence presented against Dr. Kamel for elements of the offenses with which he was charged was entirely circumstantial in nature. The court of appeals found this evidence to be insufficient under the standards set forth above in that it failed to demonstrate that the doctor had personally inflicted the injuries sustained by his son.[1]

It is our view that this finding suffers from a misapplication of the Criminal Code sections under which Dr. Kamel was charged. The first of these sections is R.C. 2919.22 which defines the offense of endangering children. It reads, in relevant part:

"(A)  No person, being the parent * * * of a child under eighteen * * * shall create a substantial risk to the health or safety of such child, by violating a duty of care, protection, or support. * * *

"* * *

"(C)  Whoever violates this section is guilty of endangering children * * *. If a violation of this section results in serious physical harm to the child involved * * * endangering children is a felony of the fourth degree."

The term "substantial risk" is defined in R.C. 2901.01(H) as follows:

"* * * a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

It is not necessary to show an actual instance or pattern of physical abuse on the part of the accused in order to justify a conviction under R.C. 2919.22(A). Affirmative acts of torture, abuse, and excessive acts of corporal

---

[1] We note that the court of appeals reversed the trial court on the issue of the sufficiency of the evidence with respect to Dr. Kamel only.

punishment or disciplinary measures are expressly covered under division (B) of the section. Division (A) is concerned with circumstances of neglect as is indicated by the Committee Comment to R.C. 2912.22.[2] Manifestly, such neglect is characterized by acts of omission rather than acts of commission. See, e.g., State v. Sammons (1979), 58 Ohio St. 2d 460 [12 O.O.3d 384]. Accordingly, an inexcusable failure to act in discharge of one's duty to protect a child where such failure to act results in a substantial risk to the child's health or safety is an offense under R.C. 2919.22(A).

In applying these principles to the instant matter, the testimony of Drs. Cox and Spencer is of particular significance. Both men agreed that a major cause of Markey's death was severe brain swelling due to a blunt force impact. Such injuries could not have been caused by a fall occurring on July 28 as they would have certainly resulted in death within a very short time.

The doctors also noted severe abdominal injuries, particularly to the liver and pancreas, and concluded that they too were the result of blunt force trauma. Some of these injuries must have been sustained days before Markey's death. While Cox determined that such injuries were a secondary cause of death, Spencer felt them to be a primary cause. At any rate, Spencer emphasized that the injuries to the pancreas involved painful nerve inflammation and must have caused the victim to complain.

Finally, Dr. Cox noted the existence of some sixty-six contusions as well as several related abrasions. These injuries were of varying age and severity. Based largely upon their location, the doctors determined that their presence was not attributable to the emergency treatment received by Markey. This fact was buttressed by the testimony of several individuals who observed bruises and marks on the child in the days preceding his death.

Based upon these findings, the doctors concluded that Markey's injuries were entirely inconsistent with a fall down a flight of stairs. Such a fall would have more likely produced injuries to the extremities, particularly the knees and elbows. Moreover, the site of the injuries on the head and torso were more typical of blows than of a fall. Finally, the injuries were not sustained all at once but accumulated over some time, culminating in the victim's death. In short, Cox determined this to be a classic case of child abuse.

This testimony, if believed, presents the picture of a child who suffered multiple injuries over a period of time. The plain evidence of such suffering was all over his body. During this period, the boy was in the control and custody of one or both of his parents.

By his own testimony, Dr. Kamel personally examined his son in his final hours. Yet, no steps were taken by the doctor to secure medical attention for

---

[2] The Committee Comment to R.C. 2919.22 states, in pertinent part:

"This section is aimed at child neglect and abuse which causes or poses a serious risk to the mental or physical health or safety of the victim.

"The first part of the section defines the offense of neglect as the violation of a duty of care, protection, or support of a child which results in a substantial risk to his health or safety. * * *"

his son or to prevent any further injury to him. Certainly, this was not consistent with his parental duty of care.

Based upon the foregoing, we find that the evidence was sufficient to support a finding of Dr. Kamel's guilt under R.C. 2912.22(A). Moreover, based upon the definition of involuntary manslaughter as set forth in R.C. 2903.04(A),[3] his conviction for that offense was also warranted. The court of appeals erred in finding otherwise. However, for the reasons stated in Part II, *infra,* we affirm, and this cause is remanded to the trial court for a new trial as to Dr. Kamel.

## II

At the trial of this matter, appellees were asked on cross-examination whether either of them had ever punished their children by grabbing the child's ear and slapping him in the face. Both denied that either of them had ever taken such measures. Dr. Kamel was also specifically questioned as to whether a punishment of this nature had taken place in a Sears, Roebuck and Co. store. Kamel responded that he was unable to recall such an instance.

In order to rebut these denials, the state called H. Steven Russell to the stand. Russell testified that three or four years prior to the trial, at a Sears store in Belden Village in Canton, he observed Dr. Kamel pull one of his children upward by the ear and viciously beat the boy's face with his free hand. According to Russell, Mrs. Kamel observed this take place but seemingly had no reaction.

The potential impact of such testimony was great as it related a specific example of child abuse on Dr. Kamel's part. Moreover, it tied into testimony given by Dr. Cox that Markey had sustained ear injuries as a probable result of a grabbing force.

The court below concluded that evidence of the slapping incident was introduced by the state in order to prove the bad character of Dr. Kamel and to suggest that he had acted in conformity with the character by abusing Markey. On this basis, the court correctly held that the evidence was inadmissible for such purposes under Evid. R. 404(B).

The state now argues that this holding was erroneous in that the disputed evidence was introduced solely to impeach the credibility of Dr. Kamel who had denied the slapping incident in his cross-examination. The state argues that the evidence was admissible for this limited purpose under Evid. R. 608(B).

We need only look to the rule itself to discover that appellant's argument is without merit. Evid. R. 608(B) provides:

"Specific instances of conduct. *Specific instances of the conduct of a witness, for the purpose of attacking* or supporting *his credibility,* other than conviction of crime as provided in Rule 609, *may not be proved by extrinsic*

---

[3] R.C. 2903.04(A) provides:

"No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony."

*evidence.* They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness and untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined, has testified." (Emphasis added.)

The meaning of this rule is very clear. Other than the Evid. R. 609 exception for certain criminal convictions, a witness' credibility may not be impeached by extrinsic proof of specific instances of his conduct. Such conduct may be inquired into only by the intrinsic means of cross-examination within the guidelines set forth in Evid. R. 608(B).

The rebuttal testimony of H. Steven Russell was extrinsic in nature. As such, even if we assume that such testimony did have probative value as to Dr. Kamel's credibility, we must find that it was inadmissible under Evid. R. 608(B). Accordingly, we affirm the court of appeals as we find that the admission of this evidence was prejudicial to Dr. Kamel.

### III

In cross-examining Khaloud Kamel, the prosecution probed extensively into her use of the drug, Demerol. Mrs. Kamel stated that she began using the drug as a painkiller for a tooth problem. Although she denied being addicted to the drug, she admitted that she had written prescriptions on her husband's prescription blanks in order to obtain more doses of it. During this period she was pregnant with Markey and, as a result of her taking the drug, the child was born an addict.

The state also presented a toxicologist, Charles Winek, as a rebuttal witness to give an academic treatise on Demerol. In essence, Winek explained the nature of the drug and its effect upon the user.

On review, the court of appeals held that the trial court had erred in permitting cross-examination and expert testimony on this subject. The court reasoned that the evidence was not admissible for purposes of impeaching Mrs. Kamel or to prove that her character was consistent with the charges against her.

We are unable to agree with the appellate court's conclusion. A careful review of the record below indicates that appellees themselves raised the subject of Mrs. Kamel's drug problem and made it an issue at trial.

Appellees' attorney first raised the drug problem in the jury *voir dire*:

"Anyone have any personal experience with a drug called Demoral [*sic*] or know what it is? There may well be evidence and I'll tell you now, it's only fair to tell you, there may be evidence in this case that Mrs. Kamel at some point was taking a drug called Demoral [*sic*], not at the time of the occurrence, but sometime before the occurrence, not within months of the occurrence. * * * I'll tell you the drug was first administered in a hospital because of an operation she had some three years or so before and in relation to other

health problems. There may be evidence that she took that drug up to two to three months before the occurrence herein. * * *"

Still later in his opening remarks, defense counsel stated:

"You heard some allusion to [the] possibility of a drug called Demoral [sic] being talked about in this trial. * * *

"* * *

"* * * the evidence is going to show this is an unfortunate, whatever it is, unfortunate episode, it was started at a hospital periods [sic] of one's life when pain or whatever it is comes about it started[.] But the evidence will show there was no relation to drugs, to physical violence and to this young boy's death."

Later, defense counsel cross-examined state's witness Deputy Joseph Nist concerning a written statement which he had taken from Mrs. Kamel and in the course of such questioning again elicited information concerning the drug abuse problem. Although the apparent purpose of the questioning was to suggest that Mrs. Kamel had been interrogated in an unfair or improper manner, the end result was to underscore the whole drug issue.

Based upon the foregoing, it is our conclusion that it was the defense which first put the subject of Mrs. Kamel's drug problem in issue in this case. After that point, it could not limit the subject to just those points of evidence which were in its favor. Rather, the topic became open to all relevant inquiry in the discretion of the trial court. See, generally, Evid. R. 402.

We do not find that the trial court abused its discretion in this case. This is particularly true since the record reveals that appellees interposed few objections to the witnesses being examined on the drug issue by the state at trial. See Evid. R. 103(A)(1). The court of appeals erred in holding otherwise.

## IV

During the trial of this matter, appellees on several occasions moved the court for a mistrial on the basis of prosecutorial misconduct. Each time the motion was overruled.

The court of appeals held that the motions should have been granted for several reasons. First, the court noted that the prosecutor made reference to Mrs. Kamel's drug problem in closing argument and improperly inferred that it bore upon her credibility and character. Second, the court stated that the prosecution should not have used Charles Winek as a witness as his testimony was irrelevant and prejudicial.

In light of our findings in the foregoing portion of this opinion, we do not agree that either of these reasons constituted valid grounds for mistrial.

The appellate court's remaining basis for mistrial was that the prosecution had attempted to draw improper inferences from the fact that certain key defense witnesses were not native Americans. In reviewing this ground, we note that appellees are foreign born and of Syrian descent. Several medical witnesses called by them were also of Middle Eastern origin, having been born in either Syria or Iraq. The prosecuting attorney attempted

to characterize these individuals as being unduly biased by referring to one of them as appellees' "countryman," and by otherwise suggesting that they were unreliable by reason of their foreign birth.

While we agree with the court below that the remarks in question were unwarranted and inappropriate, we are unable to find that they were so prejudicial as to deny appellees a fair trial. Accordingly, a new trial is not warranted solely upon this basis. See *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 118-119 [5 O.O.3d 98]; *State* v. *Moritz* (1980), 63 Ohio St. 2d 150, 157-158 [17 O.O.3d 358].

Based upon the foregoing analysis, the judgment of the court of appeals is reversed as to Khaloud Kamel and the judgment of the trial court is reinstated. The judgment as to Dr. Mouhamed Kamel is reversed in part and affirmed in part and the cause is remanded for a new trial in accordance with this opinion.

*Judgment accordingly.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER and C. BROWN, JJ., concur.

HOLMES, J., dissents.

HOLMES, J., dissenting. I am unable to concur in the basis of the final judgment which remands the case of Mouhamed Kamel for a new trial. The trial was extensive and, as found by the majority, the evidence was sufficient to support a finding of Dr. Kamel's guilt under R.C. 2919.22(A) and 2903.04(A). Even though the admission of the rebuttal testimony of Mr. Russell may have been inadmissible under Evid. R. 608(B), it was not prejudicial error under the totality of the other evidence adduced.

While this determination was made by the majority, an unanswered query is presented as to why there should be a new trial mandated by this court. All of the necessary evidence for the findings by the jury of guilt has been adduced. Mouhamed Kamel has had his day in court. Therefore, the jury verdict finding him guilty should be upheld.

Accordingly, I dissent from the judgment of this court which remands Dr. Kamel's case to the court of common pleas for a new trial.