793 F.2d 1292
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
KHALOUD KAMEL, Petitioner-Appellant,
v.
DOROTHY ARN, SUPERINTENDENT, Respondent-Appellee.
 85-3433
 United States Court of Appeals, Sixth Circuit.
 5/30/86
 
 AFFIRMED
 N.D.Ohio
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 BEFORE: ENGEL, MILBURN and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner Khaloud Kamel appeals the judgment of the district court denying her petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254. Finding no reversible errors by the district court, we affirm.
 
 I.
 
 2
 In connection with the death of their two and one-half year-old son, petitioner and her husband, Dr. Kamel, were each charged in Ohio state court with one count of child endangering in violation of Ohio Revised Code Sec. 2919.22 and one count of involuntary manslaughter in violation of Ohio Revised Code Sec. 2903.04(A). The prosecution's theory was that the couple abused their child to the point that death resulted. According to the Kamels, their son's bruises were the result of his having fallen down a flight of stairs. After trial by jury, both petitioner and her husband were found guilty as charged. Petitioner was sentenced to imprisonment for seven to twenty-five years.
 
 
 3
 On direct appeal, the Ohio Court of Appeals reversed both convictions, entered final judgment of acquittal for Dr. Kamel, and remanded petitioner's case for a new trial. The reversal of petitioner's conviction rested on the court's determination that the trial court erroneously admitted evidence of prior bad acts and that prosecutorial misconduct denied petitioner a fair trial. On August 1, 1984, however, the Supreme Court of Ohio reversed the judgment of the Court of Appeals in part, in that it overturned the order requiring that final judgment of acquittal be entered for Dr. Kamel, remanded Dr. Kamel's case for retrial, and reinstated petitioner's conviction and sentence. State v. Kamel, 12 Ohio St. 3d 306, 466 N.E.2d 860 (1984). Thereafter, petitioner sought the present writ of habeas corpus in the district court, which was denied.
 
 II.
 
 4
 On appeal petitioner first argues that the introduction of evidence concerning her use of Demerol prior to her son's death operated to deny her a fair trial. Before addressing petitioner's arguments, we must first determine whether consideration of this issue is foreclosed by the 'cause and prejudice' rule. See Wainwright v. Sykes, 433 U.S. 72, 97 S. Ct. 2497 (1977). The district court noted that the Ohio Supreme Court found that petitioner partially waived the right to raise this issue on direct appeal by reason of her failure to object to most of the drug-related testimony. The district court stated, 'This procedural waiver under Ohio law forecloses the right to raise the issue in a petition for writ of habeas corpus.'
 
 
 5
 In Hockenbury v. Sowders, 620 F.2d 111, 115 (6th Cir. 1980), cert. denied, 450 U.S. 933 (1981), we stated:
 
 
 6
 Wainwright does not preclude federal review of claims in habeas corpus proceedings when, in spite of the petitioner's failure to object to the matter at trial, the state courts reach the merits of petitioner's claim instead of denying direct review of the claim on procedural grounds.
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 [W]hen the court has arguably done both . . . the central question . . . is whether the state court denied petitioner's claim based on an adequate and independent state procedural ground. In cases such as this where the state court has arguably given more than one reason for the denial of petitioner's claim, we hold that the federal court must determine whether the petitioner's failure to comply with the contemporaneous objection requirement was a substantial basis of the state court's denial of petitioner's claim. (Emphasis in original).
 
 
 10
 Under these standards, the district court erred in holding the 'cause and prejudice' rule applicable to this case. A reading of the Ohio Supreme Court's decision demonstrates the basis for its rejection of petitioner's claim was that 'it was the defense which first put the subject of Mrs. Kamel's drug problem in issue in this case.' 466 N.E.2d at 866. The court's only reference to petitioner's failure to object was as follows:
 
 
 11
 We do not find that the trial court abused its discretion in this case. This is particularly true since the record reveals that appellees interposed few objections to the witnesses being examined on the drug issue by the state at trial.
 
 
 12
 Id.
 
 
 13
 On this record it cannot be said that petitioner's failure to comply with the contemporaneous objection requirement was a substantial basis of the Ohio Supreme Court's denial of petitioner's claim. Therefore, Wainwright does not preclude this court's review of the merits of petitioner's claims in spite of her failure to object because 'the state courts reach[ed] the merits of petitioner's claim instead of denying direct review of the claim on procedural grounds.' Hockenbury, supra, 620 F.2d at 115.
 
 
 14
 Turning to the merits, we do not believe the introduction of the Demerol evidence denied petitioner a fair trial, the only basis upon which this otherwise state evidentiary law claim can be cognizable in a federal habeas corpus action. See Poole v. Perini, 659 F.2d 730, 735 (6th Cir. 1981), cert. denied, 455 U.S. 910 (1982). We do not, however, accept the state's view that because the evidence was properly admitted as a matter of state evidentiary law, there can be no federal constitutional claim. The correctness of the trial court's evidentiary ruling cannot control the federal constitutional claim to a fair trial.
 
 
 15
 Nonetheless, for essentially the same reasons the Ohio Supreme Court found the evidence to be properly admitted, we believe the introduction of the evidence did not deny petitioner a fair trial. The Ohio Supreme Court concluded, and we agree, that it was the defense which first put the subject of petitioner's drug problem in issue. See 466 N.E.2d at 865-66.
 
 
 16
 Although petitioner's counsel first drew attention to petitioner's use of Demerol during voir dire and opening argument, petitioner nonetheless argues it was the state who first introduced evidence of petitioner's use of Demerol during its case in chief. The relevant testimony was as follows:
 
 
 17
 Question: And Doctor in the examination of those records concerning whatever medical documentation was available up until the time of his death, did you find any evidence of any kind of disease in his history which could have led up to his instantaneous or sudden death?
 
 
 18
 Answer: No sir. There was absolutely no evidence in this child's past medical history of any significant pathological phenomenon, whether it be infectious disease, a blood coagulation disorder, a tumor whether it be a brain tumor or leukemia, etc., other than the fact that when the child was born it was under the influence of a narcotic, that really is the only significant medical history that I am aware of.
 
 
 19
 In our view it seems clear the comment regarding 'a narcotic' was gratuitous on the part of the witness and was not invited by the prosecutor who was attempting to rebut petitioner's theory that her son died of heart disease.
 
 
 20
 Petitioner further argues that it is 'absurd' to assert she waived this claim because defense counsel 'asked a single question about reference to Demerol in an exhibit offered by the state.' Brief at 21. Defense counsel's questioning (there was more than a single question) concerned a report prepared by state's witness Deputy Joseph Nist regarding verbal and written statements procured from petitioner following her son's death. Those statements were first placed in issue by defense counsel during cross-examination of Lt. George Jordan. During direct examination of Deputy Nist, the court sustained a defense objection to the prosecutor's request that the statement be read to the jury. On cross-examination, the following questioning transpired:
 
 
 21
 Defense: All right. She told you about Demarol in that statement didn't she?
 
 
 22
 Answer: Yes.
 
 
 23
 * * *
 
 
 24
 * * *
 
 
 25
 Defense: If this was an interview as you said, and if you felt near the end of the interview that Mrs. Kamel was under duress, upset, tired because of the length of the interview, and if as you say, the reason you didn't put in anything about the fall of the 28th, you allege she said, talked to you about, why do you put in Demarol on the last half page, while she's under duress and upset and tired?
 
 
 26
 Answer: Because this had been discussed earlier, that was the purpose of my being there. I don't know, it's not for me to make the determination whether or not that was the cause or not.
 
 
 27
 Defense: Was one of the purposes of you being there to interview her about the use of drugs?
 
 
 28
 Answer: Only if she wished to discuss that.
 
 
 29
 Defense counsel's cross-examination appears to be an attempt to show that Deputy Nist was somehow unfairly interrogating petitioner rather than merely interviewing her. While this is a completely reasonable endeavor by defense counsel, it demonstrates how counsel attempted to use evidence concerning petitioner's use of Demerol to her advantage while at the same time contending the prosecutor should be foreclosed from delving into the subject. Under these circumstances, we do not believe it can be said that the prosecutor's subsequent introduction of additional evidence concerning petitioner's use of Demerol denied her a fair trial.
 
 
 30
 Petitioner next argues she was denied a fair trial as a result of the introduction of extrinsic evidence that Dr. Kamel slapped a child in a department store some four years prior to trial while petitioner passively watched. This evidence was erroneously admitted. See 466 N.E.2d at 865. However, although the testimony certainly was prejudicial to Dr. Kamel, the reference to plaintiff was fleeting. In a trial spanning ten days and spawning over 1,000 pages of transcript, we do not believe this isolated testimony deprived petitioner of a fair trial.
 
 
 31
 Petitioner's final claim is of prosecutorial misconduct. We have carefully considered each of petitioner's claims in this regard and have concluded that the complained of actions were not 'so egregious so as to render the entire trial fundamentally unfair.' Cook v. Bordenkircher, 602 F.2d 117, 119 (6th Cir.), cert. denied, 444 U.S. 936 (1979). See also Angel v. Overberg, 682 F.2d 605, 607-08 (6th Cir. 1982).
 
 III.
 
 32
 Accordingly, the decision of the district court denying the petition for a writ of habeas corpus is AFFIRMED.
 
 
 33
 RYAN, J. Dissenting.
 
 
 34
 In my judgment, the petitioner's conviction was obtained following a trial so fundamentally unfair as to amount to a denial of due process of law. U.S. Const. amend. XIV.
 
 
 35
 Due process is denied where the lack of fundamental fairness fatally infects the trial; 'the acts complained of must be of such quality as necessarily prevents a fair trial.' Lisenba v. California, 314 U.S. 219, 236 (1941). While habeas review does not ordinarily extend to state court rulings on the admissibility of evidence, Fuson v. Jago, 773 F.2d 55, 59 (6th Cir. 1985), an erroneous evidentiary ruling which renders a trial fundamentally unfair warrants a writ of habeas corpus. Walker v. Engle, 703 F.2d 959, 962 (6th Cir.), cert. denied, 464 U.S. 962 (1983).
 
 
 36
 Improper admission into evidence of testimony concerning the petitioner's use and abuse of the drug Demerol, including the manner in which it affected her unborn child, the deceased, her apparent forgery of presciptions to obtain the drug, and the 'academic treatise on Demerol' delivered by the prosecutor's expert witness on rebuttal, combined to so unfairly infect the proceedings as to create the likelihood that the jury convicted the petitioner in substantial part because she was a drug user, conduct for which she had not been charged. The admission of the foregoing evidence necessarily deprived petitioner of a fair trial.
 
 
 37
 Although the court does not explicitly hold that, by first raising the subject of her Demerol use the petitioner waived any objection to introduction of evidence on that subject by the state, that appears to be the thrust of the court's opinion.[1] To the extent that the court rests its conclusion that petitioner was not denied a fair trial because the petitioner first raised the subject of her Demerol use, I must respectfully dissent.
 
 
 38
 The seed of fundamental unfairness at the trial was planted with the trial court's erroneous ruling denying the petitioner's motion in limine to exclude reference by the prosecutor to the petitioner's use of Demerol.
 
 
 39
 It is evident, from a careful reading of the trial transcript, that the state's case against the petitioner was almost entirely circumstantial and was tenuous at best, and that any successful effort to portray the petitioner as a person of bad character would have a disproportionately damaging and unfair impact.
 
 
 40
 Correctly anticipating that the trial prosecutor was prepared to introduce evidence of the petitioner's former Demerol addiction, and would produce expert opinion testimony purporting to link her addiction to the death of her son, the defense counsel, prior to trial, moved the court to preclude any evidence of Mrs. Kamel's 'drug related problems.'
 
 In response the prosecutor stated:
 
 41
 It's the position of the State it does not intend to offer any testimony concerning any drug problems of Mrs. Kamel in its case in chief, does not intend to mention in voir dire or opening statement nor during the case in chief, only such time as the issue arises as a result of cross-examination of the doctor or Mrs. Kamel do we intend to elicit such testimony and show it's a continuing occurrence of conduct over a period of years. We do have an expert who will relate the drug addiction to conduct in this case. (Emphasis added.)
 
 
 42
 The prosecutor suggested no reason why such evidence should be admissible, volunteered no purpose for which the evidence would be offered, and cited no rule of evidence to justify its admission; and the trial court made no inquiry of the prosecutor concerning those matters.
 
 
 43
 The court declared that the evidence would be admitted on the terms established by the prosecutor:
 
 
 44
 The Court: Motion will be overruled. However, the prosecutor will be bound by his statement, no mention will be made through any other witnesses other than upon cross-examination of the parties or rebuttal evidence. (Emphasis added.)
 
 
 45
 A careful reading of the prosecutor's statement reveals that, despite his preliminary protestations, he did indeed intend to introduce evidence of the petitioner's 'drug problems.' Not only did he declare an intention to raise the subject during the cross-examination of Dr. Kamel, petitioner's husband and codefendant, he was also prepared to call 'an expert who will relate the 'drug addiction' to conduct in this case. . . .'[2] It was therefore made very clear to petitioner and to her counsel that, whether petitioner testified or not, if her husband and codefendant Dr. Kamel testified, the jury would be apprised of petitioner's 'drug addiction' and that, in all events, the trial court would permit the prosecutor to call 'an expert' to relate petitioner's drug addiction to her son's death.[3] Moreover, it was made clear to the petitioner and to her counsel that the price of petitioner's decision to take the witness stand would be cross-examination concerning her history of drug use. Thus, petitioner's counsel, in light of the court's ruling in limine, was helpless to prevent revelation of evidence concerning his client's 'drug problem' whether petitioner testified or not.
 
 
 46
 Having lost the motion in limine, and being faced with the very damaging evidence of his client's drug use and its concommitant adverse reflection upon her character, the defense counsel did what minimally competent counsel would be expected to do: he attempted to blunt and soften the damaging impact of the improper evidence by inquiring of the jury, upon voir dire, whether hearing such evidence would interfere with any juror's ability to return a fair verdict. Similarly, he mentioned, during his opening statement, that Mrs. Kamel's Demerol use might be 'talked about in this trial.'
 
 
 47
 Despite the prosecutor's representation to the court that he '[did] not intend to offer any testimony concerning any drug problem of Mrs. Kamel in [the] case in chief,' that is not how he proceeded. Deputy Joseph Nist was one of the witnesses called by the prosecutor in his case in chief. Deputy Nist testified that he interviewed Mrs. Kamel after advising her of her Miranda rights, and that Mrs. Kamel gave a lengthy and detailed statement about the death of her child. Although the deputy and the prosecutor characterized the statement as Mrs. Kamel's 'written statement,' the deputy's testimony revealed that, while the statement was given voluntarily by Mrs. Kamel, she was too nervous and upset to write the statement herself and agreed that Deputy Nist could reduce her statement to writing. That is what was done, and Mrs. Kamel signed the statement. The statement was marked as prosecution Exhibit 17. The prosecutor, after having the exhibit marked, asked the witness to read the statement aloud to the jury. The defense counsel objected to the statement, which contained damaging references to petitioner's former addiction to Demerol and other prejudicial references to her drug use, and his objection was overruled. Then, the following occurred:
 
 
 48
 [Defense Counsel]: The statement will speak for itself. When it gets into the jury room they can read it.
 
 
 49
 The Court: Objection be sustained.
 
 
 50
 Thus, it was evident to petitioner and her counsel that petitioner's statement containing damaging references to her use of Demerol would be examined and considered by the jury for the first time in the jury room, after the trial was over, without an opportunity for the petitioner to acknowledge, contradict, mitigate, refute, or, in any fashion, explain the matters recorded by Deputy Nist in Exhibit 17, unless petitioner's counsel explored the subject with Deputy Nist on the witness stand. The result was that, unless the petitioner's counsel inquired about the subject upon cross-examination of the police officer, the prosecutor would have succeeded in deftly getting before the jury, but only in the jury deliberation room after the trial was over, the prosecutor's evidence of petitioner's drug use, unchallenged during trial, and, from the jurors' perspective, purposely hidden from them by the petitioner save for the prosecutor's introduction of Exhibit 17. It is in the wake of those events, and in light of those circumstances, that petitioner is charged with having 'first placed in issue' reference to her use of Demerol.
 
 
 51
 What followed was a trial in which the prosecutor devoted a major part of his attention to the petitioner's history of use and abuse of Demerol, beginning more than two years prior to the incident for which she was on trial and extending up to a period ending two or three months prior to the death of her son. Thus, the prosecutor succeeded in focusing the jury's attention less upon the tenuous circumstantial evidence connecting the petitioner to the child's death than upon her character as a drug abuser who assertedly forged pharmaceutical prescriptions to obtain drugs and gave birth to a child innocently addicted to Demerol. The prosecutor's reference to the petitioner's drug problems in the course of questioning several witnesses for the state, his extensive cross-examination of the petitioner about her use of Demerol, and the expert testimony of a toxicologist whose testimony the prosecutor characterized as an 'academic treatise on Demerol' combined to paint the picture of a drug dependent defendant of weak character whose self-indulgence abused her unborn child, and who was deserving of conviction. The result was not a trial merely made imperfect by fleeting reference to uncharged misconduct first introduced by petitioner, but one in which the prosecutor, despite protestations of fairness, relied heavily upon highly prejudicial inadmissible and inflammatory evidence of uncharged misconduct designed to paint the petitioner as a bad person who is the 'type' to be guilty of killing her son.
 
 
 52
 It is clear that the prosecutor's repeated reference to the petitioner's addition to Demerol, her use of forged Demerol prescriptions, and her responsibility for her son's withdrawal pains at birth, was inadmissible evidence under the Ohio Rules of Evidence. The prosecutor does not suggest any provision of the Ohio Rules of Evidence, pursuant to which the disputed testimony was admissible, save to suggest the testimony was 'relevant.'
 
 
 53
 Uncharged misconduct of the kind involved here is admissible under Ohio Evid. R. 404(b) if it is relevant to prove one of the factors or purposes named in the rule such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. No such purpose was suggested by the prosecutor at trial, or before this court, or by the trial judge, as justifying admission of the highly prejudicial evidence of the petitioner's drug use, and none is apparent. Indeed, Ohio Evid. R. 404(b) specifically provides:
 
 
 54
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.
 
 
 55
 It is evident from an examination of the transcript of the trial that it was precisely for that forbidden purpose that the prosecutor offered the evidence of the petitioner's drug use. Moreover, the evidence was not admissible under Ohio Evid. R. 608(b) as specific instances of bad acts relating to truthfulness or untruthfulness because addiction to Demerol is not conduct which reflects upon the veracity of a witness.
 
 
 56
 Even if the evidence in question was arguably relevant or material and therefore presumptively admissible for some peripheral purpose, it is plain to me that the evidence was so substantially more prejudicial than probative of any legitimate purpose that the trial judge, in the exercise of his discretion under Ohio R. of Evid. 404, was obligated to exclude the evidence to assure that the petitioner's trial would conform to minimal standards of fundamental fairness.
 
 
 57
 Although this court must defer to the judgment of the Ohio Supreme Court with respect to the proper application of its rules of evidence, the prejudicial manner in which the prosecutor was permitted to produce evidence of the petitioner's history of Demerol use and information relating thereto, was so unfairly prejudicial as to deny the petitioner the fundamentally fair trial she is guaranteed under the due process clause of the United States Constitution.
 
 
 58
 For the foregoing reasons, I would grant the writ of habeas corpus and remand the case to the state court for a new trial, or release of the petitioner in lieu thereof.
 
 
 
 [1]
 After detailing several initial references by petitioner's counsel at trial to his client's use of Demerol, the court states:
 Under these circumstances, we do not believe it can be said that the prosecutor's subsequent introduction of additional evidence concerning petitioner's use of Demerol denied her a fair trial.
 
 
 [2]
 A promise unkept since, despite the prosecutor's representation to the trial court that the expert witness would relate the petitioner's drug use to the child's death, no such evidence was forthcoming. Prior to the witness's exegesis on the subject of Demerol use, the following occurred:
 [The Prosecutor]: And have you been able to establish any relationship between the use or the addiction or alcohol or narcotics insofar as child abuse goes?
 [Defense Counsel]: Objection.
 The Court: Overruled. You may answer.
 [The Witness]: I personally have not studied child abuse as it relates to alcoholic parents or drug dependent parents.
 
 
 [3]
 Recall that the court's ruling was that testimony of the petitioner's drug use would be permitted 'upon cross-examination of the parties or rebuttal evidence.' (Emphasis added.)