[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This is an appeal from a judgment of the Huron County Court of Common Pleas entered after a jury found defendant-appellant, Christopher M. Yarger, guilty of one count of felonious assault and one count of child endangering and the court found Yarger guilty of a physical harm specification. From that judgment, and the sentences entered thereon, appellant now raises the following assignment of error:
 "DEFENDANT-APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, SUCH TO REQUIRE REVERSAL OF HIS CONVICTION."
The facts of this case, as testified to at the trial below are as follows. In September 1995, Yarger began living with his girlfriend, Marsha Duncan, and her daughter, Kendra Lee Duncan. Marsha testified that Yarger was a father figure to Kendra, was very loving toward her and helped with her daily care. In March 1996, both Marsha and Yarger were working at Midwest Industries. Marsha's shift was generally 3:00 or 4:00 p.m. to 1:00 a.m., plus overtime, and Yarger's shift was usually 9:00 p.m. to 5:00 a.m. When Marsha worked, Yarger cared for Kendra, who was then eight months old, and when they both worked, Kendra was cared for by Bernadine Pugh. Pugh testified that she cared for Kendra on the night of Thursday, March 21, 1996 and, with the exception of a cold, Kendra was fine. Marsha then picked up Kendra at approximately 1:00 a.m. on Friday morning. On Friday, March 22, 1996, Yarger cared for Kendra while Marsha worked and stated that although she was a bit cranky, Kendra was fine. He put her to bed at approximately 10:00 p.m. and she was fine. The next morning, March 23, 1996, Yarger, Marsha and Kendra went out for breakfast. Marsha and Yarger both testified that at this time Kendra appeared normal. After breakfast, Yarger dropped Marsha off at work and brought Kendra home. At the trial below, Yarger testified to the following events. When he arrived at home, Yarger took Kendra inside the apartment, removed her coat and carried her toward her crib. Yarger testified that as the two approached the crib, Kendra reached out for the crib, leaning away from his body. Then, as they came up to the crib, Kendra lunged out of his arms, fell across the width of the crib, approximately twenty nine inches, and hit her head on the side of the far rail and an activity center that was attached to the rail. Kendra then fell back into the crib and began to cry. Yarger testified that he then ran out to the car to retrieve Kendra's diaper bag and other items and then came back to the apartment to check on Kendra. When he returned to her room, only a few minutes later, Kendra was tensed up and shaking. Then, when Yarger reached down to pick her up, Kendra went limp. Yarger tried to revive her by sprinkling water on her face, but Kendra did not respond. Yarger then rushed Kendra to a local hospital from which she was life-flighted to St. Vincent's Hospital in Toledo, Ohio. Yarger testified that he has never hit or shaken Kendra, but further admitted that he had no medical experts or medical evidence to corroborate his story.
Dr. James Geiger, a pediatric surgeon at St. Vincent's testified that he began treating Kendra on March 23, 1996. When she arrived at the hospital, Kendra had a decreased level of consciousness and needed assistance breathing. Dr. Geiger stated that she had clearly suffered some sort of head injury and therefore he ordered a CT scan to be done of her head. That scan showed bleeding over the surface of the brain and retinal hemorrhages. Because the bleeding was acute, Dr. Geiger stated that it was unlikely that the onset of Kendra's symptoms were delayed and that her injuries could manifest themselves within minutes after their infliction. Dr. Geiger further testified that Kendra had no external signs of trauma and that because she suffered from both brain surface hemorrhages and retinal hemorrhages, he diagnosed her as having shaken baby syndrome. In particular, Dr. Geiger testified that, in children Kendra's age, retinal hemorrhages are only seen when the child has been violently shaken or has been in a severe motor vehicle accident. Finally, he stated that based on his training and expertise, he did not believe that Kendra's injuries could have been caused in the manner described by appellant.
To rebut Yarger's testimony, the state called Stephanie Bolen, Bernadine Pugh's daughter and Marsha's coworker, to testify. Bolen stated that she socialized with Marsha on occasion. She then testified that on one afternoon she was at Marsha and Yarger's apartment when Kendra was on the floor playing. Bolen stated that when Kendra took Bolen's cigarettes off the table and put them in her mouth, Yarger hit Kendra across the face and took the cigarettes out of her mouth. She further related hearing Yarger state on one occasion that "if Kendra does not live by my rules, Kendra will not live at all." Bolen testified without any objection from defense counsel. The court, however, then allowed Yarger to recall Marsha to rebut Bolen's testimony. Marsha testified that she recalled the incident of which Bolen testified, but she denied that Yarger ever hit Kendra.
At the conclusion of the trial, the jury found Yarger guilty of felonious assault in violation of R.C. 2903.11(A)(1) and child endangering in violation of R.C. 2919.22(A) and (B)(1). Subsequently, the court found Yarger guilty of a physical harm specification. Appellant was sentenced to three to fifteen years incarceration on the felonious assault conviction and three to five years incarceration on the child endangering conviction with a physical harm specification. From those convictions appellant now appeals.
In his sole assignment of error, appellant contends that he was denied the effective assistance of counsel by trial counsel's failure to object to hearsay testimony regarding the cause of Kendra's injuries, failure to object to Bolen's testimony regarding Yarger's prior bad acts, and failure to present an expert witness to rebut Dr. Geiger's testimony.
The standard of review for evaluating claims of ineffective assistance of counsel was enunciated by the Supreme Court of Ohio in State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011, as follows:
 "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle
[1976], 48 Ohio St.2d 391 * * *; Strickland v. Washington
[1984], 466 U.S. 668, followed.)
 "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
Further, Ohio presumes a licensed attorney is competent, Vaughnv. Maxwell (1965), 2 Ohio St.2d 299, 301, and there is "`a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *.'" Bradley, supra, at 142, quoting Strickland, supra, at 689.
Initially, appellant asserts that his trial counsel was ineffective for failing to object to hearsay testimony by Marsha Duncan and Terry Robinson, a juvenile officer with the Willard Police Department, that they were told by hospital personnel that Kendra's injuries were caused by shaken baby syndrome. Although this testimony was hearsay and trial counsel did not object to its admission, we find no prejudice arose from this failure to object because Dr. Geiger, the state's expert, testified in court that Kendra's injuries were the result of a violent shaking and that she suffered from "shaken baby syndrome."
Appellant next asserts that his trial counsel was ineffective in failing to obtain and present an expert witness to rebut the testimony of Dr. Geiger. The record reveals that on October 7, 1996, appellant's trial counsel filed a motion with the trial court for an order "authorizing expenditures in an amount not to exceed Three Thousand ($3,000.00) Dollars to enable Defendant to employ medical [sic] consultant and Doctor to review and advise counsel as to the State's allegations and medical reports and to act as an expert witness on behalf of the Defendant." The court granted the motion. Subsequently, however, on November 4, 1996, appellant's trial counsel filed a motion to continue the trial date, then scheduled for November 5, 1996, for the reason that he had been unable to obtain the services of an expert medical doctor. Attached to the motion to continue was the affidavit of appellant's trial counsel in which he attested:
 "I received the medical records including x-rays and cat-scans [sic] on October 14, 1996 and mailed same to Dr. Stephen Dunton who, upon review declined to offer an expert opinion. On October 18, 1996, I mailed the medical records, x-rays, and cat-scans [sic] to Dr. Marvin Miller at Childrens Medical Center in Dayton, Ohio. Upon review, Dr. Miller offered information but declined an expert opinion. On October 28, 1996, I mailed the same medical records, x-rays and cat-scans [sic] to Dr. Stephen Guertin at Sparrow Hospital, Lansing, Michigan. Dr. Guertin has reviewed said records and will report as soon as I can reach him.
 "I have made substantial contacts with the Ohio Public Defender's Office and was ultimately referred to Kim Hart of Holland, Ohio. She has been instrumental in referring me to doctors who can be objective in looking at child abuse medical information, and continues to help direct my efforts."
Despite these efforts, appellant's trial counsel was unable to produce expert testimony at the trial to rebut the testimony of Dr. Geiger. We fail to see how this rises to ineffective assistance of counsel. Counsel clearly made numerous efforts to find a medical expert to assist in appellant's defense but was ultimately unsuccessful. Appellant himself testified that he had no medical evidence to corroborate his version of the accident. Accordingly, appellant has not established that his trial counsel was ineffective for failing to obtain and present an expert witness to rebut the testimony of Dr. Geiger.
Finally, appellant contends that his trial counsel was ineffective for failing to object to Bolen's testimony regarding appellant's prior bad acts. Evid.R. 608(B) provides in relevant part:
 "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence."
Bolen's testimony that she had previously seen appellant strike Kendra was clearly extrinsic evidence of a specific instance of appellant's conduct. More importantly, it was introduced by the state to attack appellant's character for truthfulness, i.e., to attack appellant's prior statement that he had never hit Kendra. Accordingly, the testimony was inadmissible, State v. Kamel
(1984), 12 Ohio St.3d 306, 310-311, and appellant's trial counsel should have objected to it. Nevertheless, given the uncontradicted testimony of Dr. Geiger, we cannot say that there is a reasonable probability that, absent Bolen's testimony, the outcome of the trial would have been different. As such, appellant's trial counsel's failure to object to Bolen's testimony did not amount to ineffective assistance of counsel. We have thoroughly reviewed the transcript from the trial below and find no omissions or commissions by appellant's trial counsel that rise to the level of ineffectiveness. Accordingly, appellant's sole assignment of error is not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Huron County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ______________________________ George M. Glasser, J.
JUDGE _______________________________ Melvin L. Resnick, J.
JUDGE
 ________________________________ Richard W. Knepper, J.
JUDGE
CONCUR.