[Cite as *State v. Greenlee*, 2012-Ohio-1432.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24660 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 10-CRB-1102-A |
| v. | : | |
| | : | |
| KIEL GREENLEE | : | (Criminal Appeal from Miamisburg |
| | : |  Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of March, 2012.

. . . . . . . . . . .

CHRISTINE L. BURK, Atty. Reg. #0050559, City of Miamisburg Prosecutor's Office, 10 North First Street, Miamisburg, Ohio 45342
      Attorney for Plaintiff-Appellee

SCOTT BLAUVELT, Atty. Reg. #0068177, 246 High Street, Hamilton, Ohio 45011
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}   Kiel Greenlee appeals a trial court's verdict finding him guilty of child endangerment. He contends that the verdict is not supported by sufficient evidence. Greenlee alternatively contends that the verdict is contrary to the manifest weight of the evidence. We

affirm.

**A. The Facts**

**{¶ 2}** One morning in May 2010, Greenlee was doing various household chores and his four-year-old son, T.G., was watching cartoons. Greenlee's mother, Gloria Greenlee, also a resident at the home, had already left for work.[1] Greenlee went upstairs to the bathroom, where he stayed for 10-15 minutes. When he came down, T.G. was gone.

**{¶ 3}** Greenlee looked for his son in the house for about 10 minutes. He then looked outside in the front and back yards and checked at a neighbor's house. Not finding him, Greenlee walked toward a park at a school down the street. On his way, Greenlee met a friend, Doug Tussey, and he asked Tussey to help him look. Tussey searched the neighborhood in his car. At the school, Greenlee asked teachers and students if they had seen his son. No one had. At some point, Greenlee called his mother to tell her that T.G. was missing. Gloria left work to come home.

**{¶ 4}** Four to six houses away from Gloria's house, David Lambert was working in his back yard. He looked up and saw a small boy whom he did not recognize peering over the edge of a retaining wall into a ravine 8 feet below. Worried that the boy might tumble over and get hurt, Lambert quickly went over to the boy and led him to Lambert's front porch. He and the boy sat on his front porch for 15 minutes or so with the hope that someone would soon come looking for him. When no one did, Lambert took him around to neighbors' houses, trying to find the boy's parents. After 45 minutes or so, Lambert called the police.

**{¶ 5}** Officer Neer arrived at Lambert's house about 10 minutes after he was

---

[1] Greenlee lives with his mother. Under a custody agreement, Gloria has custody of T.G. every other weekend.

dispatched. Neer had been there for 15-20 minutes when Tussey arrived and identified the boy as Greenlee's child. Tussey called Greenlee on his cell phone to tell him that he found his son. Soon, both Gloria and Greenlee arrived at Lambert's. Neer learned that Greenlee had a warrant out for his arrest. So he released T.G. to Gloria.

{¶ 6} Greenlee, taking the stand in his own defense, testified that the total time from when he discovered T.G. was gone until they were reunited was about 25 minutes. But the trial court expressly found that Greenlee had no idea where his son was for about 1 hour and 40 minutes. The record supports the finding of the trial court. It is undisputed that, during that time, Greenlee never called the police. He testified that he did not call "because of the time frame if I found him it would be a waste of the police's time at that point." (Tr. 41).

{¶ 7} Greenlee was charged with one count of endangering children under R.C. 2919.22(A). A bench trial was held in Miamisburg Municipal Court. After the prosecutor had presented her case, Greenlee moved for an acquittal under Crim.R. 29. The court overruled the motion. Greenlee then presented his defense. Ultimately, the court found Greenlee guilty and imposed a 180-day suspended jail sentence.

{¶ 8} Greenlee appealed.

## B. The Sufficiency of the Evidence

{¶ 9} Greenlee alleges in the first assignment of error that the trial court erred by overruling his motion for acquittal and erred by finding him guilty of child endangerment. He contends that the evidence is insufficient to find him guilty.

{¶ 10} "A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury

or sustain the verdict as a matter of law." *State v. Cephus*, 161 Ohio App.3d 385, 2005-Ohio-2752, 830 N.E.2d 433, ¶ 50 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). In a sufficiency challenge, "the relevant inquiry is whether after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. McLeod*, 165 Ohio App.3d 434, 2006-Ohio-579, 846 N.E.2d 915, ¶ 9 (2d Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). "The legal sufficiency of the evidence is a question of law, not a question of fact." *Id.*, citing *Thompkins* at 386. So "an appellate court must give 'full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.*, quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 11} "An inexcusable failure to act in discharge of one's duty to protect a child where such failure to act results in a substantial risk to the child's health or safety is an offense under R.C. 2919.22(A)." *State v. Kamel*, 12 Ohio St.3d 306, 466 N.E.2d 860 (1984), paragraph one of the syllabus. Specifically, R.C. 2919.22(A) pertinently prohibits a parent of a young child (under 18 years) from "creat[ing] a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." The culpable mental state for this offense is recklessness. *McLeod* at ¶ 11, citing *State v. Adams*, 62 Ohio St.2d 151, 153, 404 N.E.2d 144 (1980).

{¶ 12} Greenlee contends that the evidence is not sufficient to find that he created a substantial risk to his son's health or safety, or to find that he violated one of the duties

mentioned, or to find that he acted recklessly. We disagree.

{¶ 13}   The evidence supports the trial court's finding that by failing to call the police Greenlee created a substantial risk to his son's safety. "Endangering children may be committed by an omission resulting in a substantial risk of injury to a child." (Citation omitted.) *McLeod*, 165 Ohio App.3d 434, 2006-Ohio-579, 846 N.E.2d 915, at ¶ 12. "'Substantial risk' means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). The undisputed evidence is that, at the time, T.G. was only 4 years old, and that the house from which he escaped is in a city neighborhood. Vehicles drive on neighborhood streets, and four-year-olds are not the most cautious. Such a young child could run out in front of a car and be hit. Also, those who abduct children can prowl neighborhood streets. A four-year-old would be helpless if he were an abductor's target. Furthermore, it is undisputed that a ravine runs near the house, which Greenlee admitted he knew about. That T.G. was found poised on the edge of an 8-foot drop into the ravine plainly shows that it posed a substantial risk to his safety. Therefore a rational factfinder could find that a strong possibility existed that T.G.'s safety was at risk roaming the neighborhood for an hour and forty minutes.

{¶ 14}   The evidence also supports the trial court's finding that Greenlee created the risk to his son's safety by violating a duty of protection. It cannot seriously be disputed that, given the dangers that exist, noted above, a parent's duty to protect his young child requires keeping the child from wandering around outside unsupervised. To be clear, a four-year-old child wandering off, by itself, is not necessarily indicative of child endangerment. But if the

child manages to escape the parent's supervision, whether or not this is the parent's fault, the duty of protection demands that the parent make an effort to find the child as quickly as possible. A reasonable interpretation of the time parameters in the record is that the defendant had only been looking for the child for less than a half hour. (T. 40) Given the trial court's determination that the child had been missing for a total of 1 hour and 40 minutes, that means that the defendant was not aware the child was missing for over an hour. At no time during the entire 1 hour and 40 minutes that his son was missing did Greenlee ever call the police. A rational factfinder could find that by failing to do so Greenlee violated his duty to protect his son.

{¶ 15} Finally, the evidence supports the court's finding that Greenlee's failure to call the police was reckless. "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). "'[S]omething is likely when there is merely good reason for expectation or belief.'" *State v. Hartley*, 194 Ohio App.3d 486, 2011-Ohio-2530, 957 N.E.2d 44, ¶ 30 (1st Dist.), quoting 1974 Legislative Service Commission staff comment to H.B. No. 511. There is good reason to believe that every minute a young child is missing brings the strong possibility that he will be harmed. It is one more opportunity for the child to dart in front of a car; it is more time for an abductor to escape. Odds are that by involving the police a missing child will be found sooner. And finding the child sooner, rather than later, undoubtedly decreases the strong possibility for harm. His son had been missing for an extended time yet Greenlee did not call the police. A rational factfinder could find that by failing to do so Greenlee was disregarding the fact that he

was creating a strong possibility that his son would be harmed.

{¶ 16}  Greenlee asserts that not calling the police was entirely reasonable. He claims that he believed that he would find his son soon, and he points out that Lambert did not contact police for at least 45 minutes after discovering T.G. Given the strong possibility for harm, we think that a rational factfinder could find it unreasonable that Greenlee did not call the police, at all, when his 4-year-old child went missing for an extended time. That Lambert did not contact police sooner is irrelevant. Lambert knew where T.G. was and knew that, while T.G. was with him, T.G. was not in any danger. Additionally, Greenlee testified that he did not call the police because he did not want to waste their time. But the trial court could have rejected this explanation based on the fact that, at the time, there was an outstanding warrant for Greenlee's arrest. A rational factfinder could find that it was not his concern for the police but the warrant that played the key role in Greenlee's decision not to involve the police.

{¶ 17}  The first assignment of error is overruled.

## C. The Manifest Weight of the Evidence

{¶ 18}  Although the evidence may be sufficient, its manifest weight may nevertheless be against the verdict. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Greenlee, in the second assignment of error, alternatively contends that the trial court's guilty verdict was erroneous because it is contrary to the manifest weight of the evidence.

{¶ 19}  Greenlee says in his brief that he is not challenging the trial court's credibility determinations. He indicates that there is no real conflict in the trial testimony. "This case is not about a question of credibility," Greenlee says, "but, instead, about a conviction not

supported by the manifest weight of the evidence regardless of credibility determinations."[2]

While "weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other,'" (Emphasis deleted.) *Thompkins* at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990), the relevant inquiry when the evidence's weight is challenged focuses on the factfinder's resolution of conflicting testimony. *See id.* Indeed, a weight-of-the-evidence challenge is all about conflicting evidence. *See id.* ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way."), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversal based on the weight of the evidence requires an appellate court to "disagree[] with the factfinder's resolution of the conflicting testimony." *Id.* Because Greenlee says that no such conflicts exist, there can be no reversal on this basis.

{¶ 20}   The second assignment of error is overruled.

{¶ 21}   The judgment of the municipal court is affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

---

[2] Reply Brief of Kiel Greenlee, p.4. Despite this argument, the record, and the trial court's written entry, support the notion that the court did not believe Greenlee's testimony that he was only upstairs for 10-15 minutes before he discovered the boy missing.

Christine L. Burk
Scott M. Blauvelt
Hon. Robert E. Messham, Jr.