OPINION
{¶ 1} On June 28, 2001, the Stark County Grand Jury indicted appellant, James T. Hill, on two counts of child endangering in the second degree in violation of R.C. 2919.22(B)(2) and two counts of child endangering in the third degree in violation of R.C. 2919.22(A). Said charges arose from incidents involving appellant and his son, age eleven months, and stepson, age two years.
 {¶ 2} A jury trial commenced on November 7, 2001. The jury found appellant guilty of the third degree felony child endangering counts and not guilty of the second degree felony child endangering counts.[1] By judgment entry filed November 16, 2001, the trial court sentenced appellant to five years in prison on each count, to be served consecutively.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 {¶ 4} "THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO PRISON AND VIOLATED APPELLANT'S CONSTITUTIONAL RIGHTS WHEN THE JURY DID NOT RETURN VERDICT FORMS WHICH ELEVATED THE OFFENSES FROM MISDEMEANORS TO FELONIES."
II
 {¶ 5} "APPELLANT'S MAXIMUM AND CONSECUTIVE SENTENCES WERE CONTRARY TO THE PURPOSES AND PROCEDURES OF OHIO REVISED CODE SECTION 2929.14."
III
 {¶ 6} "THE VERDICTS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 I {¶ 7} Appellant claims the trial court erred in sentencing him to a term of imprisonment for third degree felony child endangering because the jury's verdict did not specifically find "serious physical harm." Appellant claims the lack of such finding rendered the convictions misdemeanors of the first degree. We disagree.
 {¶ 8} R.C. 2945.75(A) provides for the protection of an accused's right to have the jury determine all of the elements of the offense:
 {¶ 9} "(A) When the presence of one or more additional elements makes an offense one of more serious degree:
 {¶ 10} "(1) The affidavit, complaint, indictment, or information either shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise, such affidavit, complaint, indictment, or information is effective to charge only the least degree of the offense.
 {¶ 11} "(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."
 {¶ 12} The state concedes there was no specific interrogatory finding serious physical harm, but argues the indictment indicating the degree of the offenses, the trial court's specific jury instructions incorporating the indictment and the language of the verdict forms satisfy R.C. 2945.75(A).
 {¶ 13} The indictment filed June 28, 2001 specifically sets forth the elements of child endangering in violation of R.C. 2919.22(A), and specifically includes serious physical harm. See, Counts 5 and 6. We note the indictment was amended by order filed October 3, 2001 to enlarge the time frame of the offenses.
 {¶ 14} In charging the jury on the child endangering counts, the trial court specifically set forth the language of the indictment:
 {¶ 15} "In Count 2 the Defendant is charged with endangering children.
 {¶ 16} "Before you can find the Defendant guilty, you must find beyond a reasonable doubt that as a continuous course of conduct from August 1, `98, to September 1, `99, and in Stark County, Ohio, the Defendant, James Hill, being a parent of a child, to wit, Chaunsey Miner, who is under the age of 18, recklessly created a substantial risk to the health or safety of the child by violating a duty of care, protection, or support, and that the violation of said duty of care, protection, or support resulted in serious physical harm to Chaunsey Miner.
 {¶ 17} "* * *
 {¶ 18} ""In Count 4 the Defendant is charged with endangering children.
 {¶ 19} "Before you can find the Defendant guilty, you must find beyond a reasonable doubt that as a continuous course of conduct from January 1, `99, to September 1, `99, in Stark County, Ohio, that the Defendant James Hill being a parent of a child, to wit, Markel Hill, who is under the age of 18, recklessly created a substantial risk to the health or safety of the child by violating a duty of care and protection or support and that the violation of said duty, care, protection, or support resulted in physical — serious physical harm to Markel Hill." T. at 389 and 392, respectively.
 {¶ 20} The trial court specifically instructed on the separate element of serious physical harm (T. at 390, 393), and included the general instruction that "all of the essential elements of any one or more of the offenses charged in the separate counts of the indictment" must be found to have been proven beyond a reasonable doubt. T. at 393. The jurors received copies of the written jury instructions. T. at 426.
 {¶ 21} The verdict forms filed November 14, 2001 found appellant "Guilty of Endangering Children as charged in Count Two of the Indictment" and "Guilty of Endangering Children as charged in Count Four of the Indictment." We note defense counsel did not object to the wording of the forms before deliberation or at sentencing.
 {¶ 22} Considering these three items in toto, we find the trial court did not err in sentencing appellant on third degree felonies. In doing so, we follow our precedent set forth in State v. Dukes, (February 10, 1997), Stark App. No. 1996CA00212:
 {¶ 23} "However, even if the verdict form does not expressly state the degree of the offense or that the additional element is present, the accused may be convicted of the greater offense if. (1) the verdict form refers to the offense as charged in the indictment, (2) the indictment expressly states the elements for the greater offense, and (3) the court has read the indictment to the jury as part of its instructions. State v. Elkins (March 13, 1995), Stark App. No. 94-CA-0204, unreported."
 {¶ 24} Assignment of Error I is denied.
 II {¶ 25} Appellant claims the trial court erred in sentencing him to maximum and consecutive sentences. Specifically, appellant claims the sentences were contrary to the purposes and procedures of R.C. 2929.14. We disagree.
 {¶ 26} R.C. 2953.08 governs an appeal of sentence for felony. Subsection (G)(2) states as follows:
 {¶ 27} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 {¶ 28} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
 {¶ 29} "(b) That the sentence is otherwise contrary to law."
 {¶ 30} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 31} Appellant was found guilty of two counts of child endangering in violation of R.C. 2919.22(A), felonies of the third degree. R.C. 2919.22(E)(2)(c). Pursuant to R.C. 2929.14(A)(3), felonies of the third degree are punishable by "one, two, three, four, or five years." By judgment entry filed November 16, 2001, the trial court sentenced appellant to five years in prison on each count, to be served consecutively.
 {¶ 32} First we will address the individual sentences. Pursuant to R.C. 2929.14(B), if an offender has not previously served a prison term, as is the case herein, a trial court shall impose the shortest prison term available unless "the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." Under State v. Edmonson, 86 Ohio St.3d 324, 1999-Ohio-110, syllabus, the Supreme Court of Ohio held "R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." (Emphasissic.)
 {¶ 33} Pursuant to R.C. 2929.14(C), a trial court may impose the longest prison term authorized for the offense only upon offenders "who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, * * * and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 34} In finding community control sanctions were not appropriate, the shortest prison term would demean the seriousness of appellant's conduct and would not adequately protect the public and the longest prison term was warranted, the trial court stated the following during the sentencing hearing:
 {¶ 35} "The first factor is the injuries that the children receive to include fractures of bones that were fractured months prior to their being discovered, multiple fractures on Chaunsey, fractures on Markel, burns, whether put there inadvertently as claimed by hot water or allowing a child to play on a grate, I find those excuses not to be credible.
 {¶ 36} "So if you look at the severity of the injuries to both of these children, I believe the injuries are the most severe.
 {¶ 37} "The second issue the Court should look at is the age of the children. Did in fact these children have any way in which they could have protected themselves or sought help from another person?
 {¶ 38} "The Court finds that due to their age, they are unable to protect themselves or to seek help from other family members. I think that is a most significant factor.
 {¶ 39} "The third factor the Court is to look at is to determine the length in which this abuse took. Now, we know from the testimony that some of those bruises were very old. From the testimony we know that some of it happened long ago.
 {¶ 40} "So the State of Ohio in their prosecution indicated a continuous course of conduct, one from August of `98 all the way through September of `99, and then one from January, for the youngest child from January of `99 through September of `99.
 {¶ 41} "So we have at least 9 months, if not 12 or 13 months in the case of Chaunsey, point being that this abuse, we know the abuse occurred. It has never been a question if it did. The only question was who did it. But the children suffered terrible injuries, and they suffered over an extended period of time.
 {¶ 42} "This was not just an instant loss of control in which the children were seriously injured and then the appropriate medical attention was given. This was repeated injury to one and two year old children who were left then to heal on their own.
 {¶ 43} "The fourth factor is the effect it has had on the children, and again I would refer back to the testimony that was given in both cases. The stunting of growth of Chaunsey to me is probably one of the most compelling pieces of testimony I have heard since I have been on this bench.
 {¶ 44} "For a child to be suffering from slow growth and then removed from an environment and having accelerated now to almost being in the normal range to me is such evidence of the fear and torture that those children went through that any other words pale in comparison.
 {¶ 45} "These children will live with this their entire lives. They have no maximum term; and from the testimony received by this Court, while they are getting better, they are going to have, to take a long time for them if they can ever shake the effect of this type of treatment against them.
 {¶ 46} "Lastly, I have to look at the age of the individuals that are guilty of the neglect; and I find them to be adults. I find them to have been able to function; and while I understand that Mr. Hill's IQ is in the low range, it is only in the low range.
 {¶ 47} "No evidence has been presented that they suffer from any mental disability as to how to function in life. Mrs. Hill worked jobs. They took income. They were able to pay bills. They were able to do all those normal things.
 {¶ 48} "So I don't find in viewing their side any physiological or mental impairment which would in any way excuse the conduct which they engaged in.
 {¶ 49} "So I find based on those reasons that they have in fact committed the worst form of the offense of child endangering." T. at 464-467.
 {¶ 50} Upon review, we cannot find clear and convincing evidence that the record does not support the individual sentences or that the sentences are otherwise contrary to law.
 {¶ 51} Now we will turn our attention to the issue of consecutive sentences. R.C. 2929.14(E)(4) states as follows:
 {¶ 52} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 53} "* * *
 {¶ 54} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 55} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 56} Pursuant to R.C. 2929.19(B)(2)(c), a trial court imposing consecutive sentences must state on the record "its reasons for imposing the consecutive sentences."
 {¶ 57} In sentencing appellant to consecutive sentences, the trial court explicitly stated the following:
 {¶ 58} "The Court has read into the record the things that were most of concern in this case to this Court, and I feel that these two individuals need to be punished for their failure to respond as human beings, just decency of a human being; but I must be committed, I must under 2929.14(E)(4) that the sentence can not be disproportionate to the seriousness of the conduct and the danger the Defendant poses to the public; and if I find any of the following, One, was it committed while they were awaiting trial? The answer is no.
 {¶ 59} "Second, does a prior record demonstrate consecutiveness necessary to protect the public? The answer is no.
 {¶ 60} "But under 2929.14(E)(4)(B), is the harm so great or so unusual that no single term adequately reflects the seriousness of the Defendants' conduct?
 {¶ 61} "There are two victims in this case. There are two victims in which separate acts were done at separate times, I guess in a sense uninfluenced by the acts against one.
 {¶ 62} "Markel was injured independently of anything that Chaunsey may have done, and Chaunsey was injured independently of anything that Markel did. Two victims, two children each neglected and each very seriously injured.
 {¶ 63} "Each child deserves to have you sentenced for each of the acts you committed against those two young people. To combine a sentence concurrently would be an insult to the children.
 {¶ 64} "It would be unfair to the children, and I find that the harm you committed on those two children independently of each other is so unusual, so great, that no single term would adequately reflect the seriousness of your conduct." T. at 468-470.
 {¶ 65} We find the trial court's lengthy colloquy to be sufficient to meet the requirements of R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2)(c).
 {¶ 66} Upon review, we cannot find clear and convincing evidence that the record does not support the consecutive nature of the sentences or that the aggregate sentence is otherwise contrary to law.
 {¶ 67} Assignment of Error II is denied.
 III {¶ 68} Appellant claims his convictions were against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 69} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 70} Appellant was convicted of child endangering in violation of R.C. 2919.22(A) which states "[n]o person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * *"
 {¶ 71} In State v. Kamel (1984), 12 Ohio St.3d 306, paragraph one of the syllabus, the Supreme Court of Ohio held "[a]n inexcusable failure to act in discharge of one's duty to protect a child where such failure to act results in a substantial risk to the child's health or safety is an offense under R.C. 2919.22(A)."
 {¶ 72} It is appellant's position that he was not the parent of Chaunsey and therefore he should not be "held responsible for any injuries suffered by Chaunsey at the hands of another." Appellant's Brief at 10. Appellant argues the state failed to prove he improperly supervised the children and their injuries occurred during his time of supervision.
 {¶ 73} Dr. Daryl Steiner, who examined Chaunsey at Children's Hospital Medical Center of Akron, testified the child had visible bruising around his eyes, forehead and lower lip, as well as an abrasion on his arm and healing burns on his back. T. at 147-148. After x-ray and bone scan, it was determined Chaunsey had eight fractures of varying ages, "[s]ome were recent, and some were older and healed or in the process of healing; and others were nearly healed." T. at 149. The approximate ages of the injuries ranged from five to seven days to eight to ten weeks. T. at 150-151, 155. Fractures were found in Chaunsey's left hand, right forearm, left clavicle, left wrist, left sixth rib, left seventh rib, right shoulder blade and right upper blade. T. at 150-151. The thigh bone in the child's right leg had been broken and was healing. T. at 151. An MRI scan of the child's head revealed "an area of old hemorrhage on the surface of the brain" caused by "a severe blow to the head" "two to three weeks earlier." T. at 151-152. Although Chaunsey suffers from Russell-Silver Syndrome, a condition causing slow growth, his bones were of normal composition and not brittle. T. at 152-154. Dr. Steiner opined Chaunsey's behavior of hiding in small places was indicative of trying to hide from injury. T. at 157, 207. He also opined an adult would have known the child was injured:
 {¶ 74} "* * * In the Emergency Department we see children that come into the emergency room all the time with broken arms, broken legs, and broken collarbones, broken hands; and the parents know.
 {¶ 75} "It hurts. The kids don't use their arms, they don't use their legs. There is swelling. There is symptoms of broken bones, most notable which is pain.
 {¶ 76} "So if a child has suffered eight broken bones, it is my opinion that without a doubt the care provider knew that there was something going on, that there was some pain, there were symptoms of." T. at 157-158.
 {¶ 77} Dr. Steiner examined Markel's medical records including his x-rays and testified the child sustained two fractures which were healing, one on the right eleventh rib and the other in the right hand. T. at 162, 166. Dr. Steiner opined fractures to ribs are not caused by accidental abuse or injury "because of the necessary mechanism that it takes to break a rib." T. at 159, 164. In order to break a rib, a child must be "gripped tightly, and then shaken." Id.
 {¶ 78} Michelle Mizda, a social worker, and Detective Richard Schaefer of the Canton Police Department interviewed appellant and his wife and determined from their statements that appellant was the main care giver of the children. T. at 204, 274. Appellant told Ms. Mizda he was the caregiver while his wife worked two jobs, and "he watches them all the time and they go everywhere with him." T. at 204-205, 206. Appellant told of accidents that he believed were the possible cause of the children's injuries. T. at 207-211, 274-311. Appellant acknowledged injuries to Chaunsey, but claimed the child never cried. T. at 277, 282, 291, 310.
 {¶ 79} Dr. Robert Benson, Chaunsey's pediatric endocrinologist, testified after Chaunsey had been removed from his home environment, he "exhibited an absolutely extraordinary rate of growth way above the normal range in expectations for his age and started moving at a very positive direction toward the normal range." T. at 240-241. Dr. Benson opined Chaunsey had experienced "psycho-social dwarfism" as a result of his home environment. T. at 241.
 {¶ 80} Upon review of the evidence presented, we find sufficient evidence to establish appellant as the major care giver, who was present when the children were injured, and failed to obtain medical care for the children. We find sufficient credible evidence to support the jury's verdict.
 {¶ 81} Assignment of Error III is denied.
 {¶ 82} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
By Farmer, J., Hoffman, P.J. and Edwards, J. concur.
topic: manifest weight; verdict forms
[1] Appellant was found guilty of Counts 2 and 4. These counts actually correspond to Counts 5 and 6 of the eight count indictment, as appellant was indicted along with his wife, Wendy Hill. The trial court renumbered the counts in appellant's trial, presumably to ward off any possible confusion on the part of the jury.