OPINION
{¶ 1} Defendant-appellant Wendy Hill appeals her conviction and sentence from the Stark County Court of Common Pleas on two counts of endangering children. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On June 28, 2001, the Stark County Grand Jury indicted appellant on two counts of endangering children in violation of R.C.2919.22(B)(2), felonies of the second degree, and two counts of endangering children in violation of R.C. 2919.22(A), felonies of the third degree. At her arraignment on July 13, 2001, appellant entered a plea of not guilty to the charges contained in the indictment. Thereafter, after the State of Ohio dismissed the two second degree child endangering charges, a jury trial on the remaining charges commenced on September 24, 2001. The following evidence was adduced at trial.
 {¶ 3} Chaunsey Miner, appellant's two year old son, was diagnosed at birth with a congenital illness known as Russell-Silver Syndrome, a form of dwarfism. While children suffering from this syndrome have normal sized heads, their bodies are small. Other than being small, their bones are "of normal composition" and "normal strength." Transcript at 234.
 {¶ 4} During mid-August of 1999, Paulette Taylor, appellant's mother, noticed that Chaunsey's hands, arms and face were "swelled up". Transcript at 205. When appellant was asked by her mother why she had not taken Chaunsey to the specialist at Akron Children's Hospital who treated him when he was born, appellant responded that she did not have "no medical." Transcript at 205. After Taylor offered to pay, Chaunsey was taken to Akron Children's Hospital to see his geneticist. Chaunsey's geneticist, in turn, referred Chaunsey to the Emergency Department, which called in Dr. Darryl Steiner, a specialist in child abuse, to treat Chaunsey.
 {¶ 5} During a physical examination of Chaunsey, Dr. Steiner observed abrasions and bruising around Chaunsey's eye and abrasions under his nose and on his left forearm. In addition, Chaunsey's lower lip was swollen and cut and there were healing burns on his back between his shoulder blades and at the top of the crease in his right buttocks. After physically examining Chaunsey, Dr. Steiner ordered a skeletal survey, which is an X-ray of all of the bones in the body. The skeletal survey revealed that Chaunsey was suffering from a broken left arm down near his wrist that was two or three weeks old and that Chaunsey had a recently broken left hand that had not yet begun to heal and a fractured seventh rib that was nearly healed. Transcript at 237. In addition, Dr, Steiner discovered that Chaunsey had "a fracture or broken bone of the right radius and ulna near the wrist" that was of "recent origin" and that Chaunsey also recently had suffered a broken left clavicle that had not yet begun healing. Transcript at 237-238.
 {¶ 6} Dr. Steiner then ordered a bone scan to look for other injuries. The following is an excerpt from Dr. Steiner's testimony at trial:
 {¶ 7} ". . . So we did the bone scans to look for other healing injuries. We saw the same fractures that were seen on the skeletal survey. In addition we saw that there was a fracture of the sixth rib on the left side.
 {¶ 8} "Q. What process was that in of healing, would you say?
 {¶ 9} "A. That was old healing, nearly completely healed.
 {¶ 10} "Q. Okay.
 {¶ 11} "A. We saw a fracture of the right shoulder blade. The right shoulder blade — shoulder blades in general just do not get fractured with accidental injuries because they are big thick bones and it takes a tremendous force and tremendous trauma for those bones to break.
 {¶ 12} "When we see them broken and healing such as this, that's very unusual.
 {¶ 13} "In addition, we saw evidence of healing fracture in the right thigh bone. The thigh bone again is a very large bone in the body, main weight bearing bone of the body; and when it's broken, it is very significant.
 {¶ 14} "So we have a total of eight broken bones at various states of healing, meaning that they all happened at different times.
 {¶ 15} "One happened — or several happened recently, and the others happened two to three weeks ago up to eight weeks, eight or ten weeks or earlier." Transcript at 239-240.
 {¶ 16} In addition, a M.R.I. of Chaunsey's brain revealed an old blood clot on the left, front side of the brain. According to Dr. Steiner, "[t]he fact that we found it, it was old, it hadn't just happened in the past, raised considerable concern that Chaunsey had been the victim of a serious, serious event, serious accident and hadn't been — there was no record of any treatment . . ." Transcript at 241. Dr. Steiner further testified that Chaunsey would have exhibited clear symptoms from the injuries he suffered. Dr. Steiner testified, for example, that after his thigh bone was broken eight to ten weeks before, Chaunsey would have stopped walking. In addition, Dr. Steiner testified that Chaunsey's arm fractures and collarbone fracture "all would have been very painful and would have resulted in obvious symptoms that would have been notable by any caring lay person, care giver of Chaunsey." Transcript at 242. With respect to Chaunsey's brain injury, Dr. Steiner testified that Chaunsey "would have clearly been ill, would have been unable to be aroused, would not have been eating properly, may have had persistent vomiting, may have lost consciousness from that blow." Transcript at 242-243.
 {¶ 17} Thereafter, Dr. Steiner diagnosed Chaunsey with battered child syndrome, which is characterized by multiple injuries that are not explained by accidental trauma and by injuries occurring over a period of time. Dr. Steiner further testified that Chaunsey's behavior in hiding in small places was consistent with battered child syndrome since children suffering from the same are "wary and afraid of adults." Transcript at 245-246.
 {¶ 18} After Chaunsey's extensive injuries were discovered, Markel Hill, appellant's younger son, was taken by social workers to Akron Children's Hospital. A skeletal scan of eleven month old Markel revealed that Markel had sustained a fracture to the tenth rib on the right side and a fracture of his right hand. Dr. Steiner also diagnosed Markel with battered child syndrome.
 {¶ 19} Detective Richard Schaeffer of the Canton Police Department, accompanied by Catherine Haskell, a social worker, interviewed appellant on the day that Chaunsey was admitted to the hospital after Pauline Taylor, appellant's mother, discovered that his arms were swollen. While, during the interview, appellant initially told the detective that she had not taken Chaunsey to the hospital due to lack of money and medical insurance and since Chaunsey did not act like he was in pain, she later told the Detective that she was concerned that medical personnel would think that Chaunsey had been abused. During a taped statement, appellant also indicated that on the previous Friday, a metal toddler bed that had been sitting against a wall fell on top of Chaunsey. Appellant also claimed that Chaunsey, while at appellant's parents' house, had fallen down some stairs while playing the previous Wednesday or Thursday. Appellant claimed that her husband told her that while Chaunsey was swelled, he "didn't feel nothing." Transcript at 123. In addition, appellant told Detective Schaeffer that Chaunsey was burned near his shoulders by a hot grate on the floor. According to appellant, Chaunsey was burned while he was laying down over the heating grate, which was very hot, while appellant was cooking. Appellant also told Detective Schaeffer that, during another incident, Chaunsey was injured when he ran into a door at her mother's house. According to Dr. Steiner, appellant's statements of how Chaunsey's injuries occurred did not correlate to his injuries.
 {¶ 20} At the conclusion of the evidence and the end of deliberations, the jury, on September 25, 2001, found appellant guilty of two counts of endangering children, both felonies of the third degree. While one of the counts involved Chaunsey, the other involved Markel. The jury, in the verdict forms, specifically found that appellant had caused serious physical harm to both Chaunsey and Markel. As memorialized in a Judgment Entry filed on November 16, 2001, appellant was sentenced to two (2) five year prison sentences. The trial court, in its entry, ordered that appellant's sentences run consecutively, for an aggregate sentence of ten years.
 {¶ 21} It is from her conviction and sentence that appellant now appeals, raising the following assignments of error:
 {¶ 22} "I. THE JURY VERDICT FINDING APPELLANT GUILTY OF THE CHILD ENDANGERING WITH A SERIOUS PHYSICAL HARM SPECIFICATION AS TO MARKEL HILL WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 {¶ 23} "II. THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT HIS [SIC] TRIAL IN VIOLATION OF THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 {¶ 24} "III. THE TRIAL COURT ERRED IN SENTENCING APPELLANT IN VIOLATION OF R.C. 2929.14(B), AND (E)(4)."
 I {¶ 25} Appellant, in her first assignment of error, argues that the verdict finding appellant guilty of child endangering with a serious physical harm specification as to Markel Hill was against the manifest weight of the evidence. We, however, disagree.
 {¶ 26} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed . . . The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 27} In the case sub judice, appellant, with respect to Markel Hill, was convicted of child endangering in violation of R.C. 2919.22(A), a felony of the third degree. Such section states, in part, as follows: "No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." Pursuant to R.C. 2919.22(E)(1)(c), if the violation of duty of care, protection or support results in serious physical harm to the child, the offense is a felony of the third degree. An inexcusable failure to act in discharge of one's duty to protect a child where such failure to act results in a substantial risk to the child's health or safety is an offense under R.C. 2919.22(A). State v. Kamel (1984), 12 Ohio St.3d 306, 309,466 N.E.2d 860.
 {¶ 28} In the case sub judice, there was evidence adduced at trial that Markel Hill, who was eleven months old at the time and who was the size of a six month old, had sustained a fracture of the right hand and a fracture of the tenth rib on the right side of his back. Based on Markel's injuries and the fact that he resided in the same home as Chaunsey, Dr. Steiner diagnosed Markel with battered child syndrome. Dr. Steiner noted that Markel "was younger and hadn't sustained as many injuries [as Chaunsey] and, of course, not over as long a period of time." Transcript at 250. In addition, in testifying about Chaunsey's injuries, Dr. Steiner indicated that bone fractures cause children to suffer severe pain and suffering.
 {¶ 29} Based on the foregoing, we cannot say that the jury lost its way in convicting appellant of child endangering with respect to Markel Hill. There was evidence in the record that appellant violated her duty to Markel, her son, by failing to seek medical treatment for him when she should have known that he was suffering from bone fractures and that her failure to act resulted in substantial risk to Markel's health or safety.
 {¶ 30} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 31} Appellant, in her second assignment of error, contends that she was denied the effective assistance of trial counsel. Appellant specifically maintains that trial counsel was ineffective by: (1) during opening statements, indicating to the jury that appellant also had the burden of proof beyond a reasonable doubt; (2) failing to object to Dr. Steiner's testimony regarding burn marks on Chaunsey's buttocks when the trial court previously had sustained a defense objection to testimony as to the same since the burn marks occurred outside of the time frame set forth in the indictment[1]; and (3) failing to review medical records, resulting in the admission of hearsay statements contained in the same.
 {¶ 32} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373.
 {¶ 33} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 34} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter, 72 Ohio St.3d 545, 558, 1995-Ohio-104,651 N.E.2d 965, citing Lockhart v. Fretwell (1993), 506 U.S. 365, 370. The United States Supreme Court and the Ohio Supreme Court have held that a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, 538 N.E.2d 373, quoting Strickland at 697.
 {¶ 35} Assuming, arguendo, that defense counsel was ineffective as appellant alleges, we find that appellant was not prejudiced as a result of the alleged ineffectiveness. While defense counsel, during opening statements, did tell the jury that appellant also had the burden of proof beyond a reasonable doubt, we note that the trial court clearly and properly advised the jury that appellant "must be acquitted unless theState produced evidence which convinces you beyond a reasonable doubt of every offense charged in the indictment and each element of that offense." Transcript at 270. (Emphasis added.) Moreover, even if trial counsel should have objected to Dr. Steiner's testimony regarding Chaunsey's burns, we note that there was evidence adduced at trial that Chaunsey suffered a total of eight fractures and a blood clot in the brain. As appellee notes in its brief, the broken bones "likely swayed the jury far more persuasively than an alleged bath water burn." Thus, admission of Dr. Steiner's testimony did not unduly prejudice appellant.
 {¶ 36} As is stated above, appellant contends that trial counsel was ineffective in failing to review medical records, resulting in the admission of hearsay statements "made by the co-defendant [appellant's husband] and his relating things Appellant told him, the opinion of a social worker that the kids were neglected and numerous hearsay statements of mother [w]here in past she could not get to hospital to visit Chaunsey regarding incidents unrelated to this case." However, assuming that the medical records were inadmissible, we find that, based upon the facts set forth in detail above, there was overwhelming evidence that appellant violated her duty of care to her children by failing to seek medical treatment for their serious injuries. Appellant, therefore, was not prejudiced by admission of the same.
 {¶ 37} Appellant's second assignment of error is, therefore, overruled.
 III {¶ 38} Appellant, in her third assignment of error, challenges her sentence. Appellant specifically asserts that the trial court erred by sentencing her to a prison term in excess of the minimum term in violation of R.C. 2929.14(B) and by ordering her to serve her two five year sentences consecutively in violation of R.C. 2929.14(E)(4).
 {¶ 39} R.C. 2953.08 governs an appeal of sentence for felony convictions. Subsection (G)(2) of R.C. 2953.08 states: "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court. The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for re-sentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 {¶ 40} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of Section 2929.13, Division (E)(4) of Section 2929.14, or Division (H) of Section 2929.20 of the Revised Code, whichever, if any, is relevant.
 {¶ 41} "(b) That the sentence is otherwise contrary to law."
 {¶ 42} As is stated above, appellant initially contends that the trial court erred in sentencing her to more than the minimum sentence in violation of R.C. 2929.14(B). Appellant, in support of her argument, notes that she has no prior criminal involvement and that the evidence as to Markel "is very scant to say the least."
 {¶ 43} R.C. 2929.14(B) states as follows: "Except as provided in division (C), (D)(1), (D)(2), (D)(3), or (G) of this section, in section2907.02 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 44} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
 {¶ 45} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." In interpreting this requirement, the Supreme Court of Ohio has held that: R.C. 2929.14(B) does not require that the trial court give its reasons for its findings that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence. State v. Edmonson, 86 Ohio St.3d 324,1999-Ohio-110, 715 N.E.2d 131, syllabus. Rather, "the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence." Id. at 326.
 {¶ 46} Upon our review of the record, we find that the trial court did not violate R.C. 2929.14(B) in sentencing appellant. At the sentencing hearing, the trial court found that the shortest prison sentence would demean the seriousness of appellant's conduct. The trial court indicated on the record that appellant and James Hill, her husband, needed "to be punished for their failure to respond as human beings, just decency of a human being . . ." Transcript at 348. The trial court further noted that the abuse occurred over an extended length of time and that both children suffered severe injuries. Furthermore, the trial court stated as follows during the sentencing hearing:
 {¶ 47} "This was not just an instant loss of control in which the children were seriously injured and then the appropriate medical attention was given. This was repeated injury to one and two year old children who were left then to heal on their own.
 {¶ 48} "The fourth factor is the effect it has had on the children, and again I would refer back to the testimony that was given in both cases. The stunting of growth of Chaunsey to me is probably one of the most compelling pieces of testimony I have heard since I have been on this bench.
 {¶ 49} "For a child to be suffering from slow growth and then removed from an environment and having accelerated now to almost being in the normal range to me is such evidence of the fear and torture that those children went through that any other words pale in comparison.
 {¶ 50} "These children will live with this their entire lives. They have no maximum term; and from the testimony received by this Court, while they are getting better, they are going to have, to take long time for them if they can ever shake the effect of this type of treatment against them." Transcript at 345-347. Based on the foregoing, we find that the trial court complied with R.C. 2929.14(B) in sentencing appellant to more than the minimum.
 {¶ 51} Appellant further submits that the trial court's imposition of consecutive sentences violated R.C. 2929.14. For the reasons set forth in our Opinion in State v. Hill, Stark App. No. 2001CA00383, 2002-Ohio-5480, we find that the trial court met the requirements of R.C. 2929.14(E)(4) in sentencing appellant to consecutive sentences.
 {¶ 52} Appellant's third assignment of error is, therefore, sustained.
 {¶ 53} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
By Edwards, J.
Hoffman, P.J. and Farmer, J. concur
[1] The burns, which allegedly occurred while appellant was bathing Chaunsey, were first mentioned during Detective Schaeffer's testimony. After defense counsel objected to testimony regarding the same since the burns occurred outside of the time frame alleged in the indictment, the trial court sustained the objection, holding that "there will be no further testimony about the bathtub burn." Transcript at 138.