[Cite as *Greenlee c. Greenlee*, 2014-Ohio-2306.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

AMANDA L. GREENLEE

      Plaintiff-Appellee

v.

KIEL T. GREENLEE

      Defendant-Appellant


Appellate Case No.    26059

Trial Court Case No.   2008-DR-527


(Appeal from Common Pleas Court-
 Domestic Relations)

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of May, 2014.

. . . . . . . . . . .

AMANDA L. GREENLEE, 775 Highway 11 South, Beattyville, Kentucky, 41311
    Plaintiff-Appellee-Pro Se

KIEL T. GREENLEE, 6124 Clematis Drive, Dayton, Ohio 45449
    Defendant-Appellant-Pro Se

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}     Defendant-Appellant, Kiel Greenlee, appeals pro se from a decision overruling his motion to modify the custody of his minor son, T.G., from T.G.'s mother, Amanda Greenlee,

to himself.[1]   In support of his appeal, Kiel contends that the trial court abused its discretion in refusing to modify custody.   Kiel further contends that the trial court's decision is against the manifest weight of the evidence.   Kiel also challenges the report of the Guardian ad Litem (GAL), contending that it was biased and unprofessional, and was based on Amanda's testimony, which was not credible.   Finally, Kiel contends that the trial court erred by aiding Amanda in her attempts to alienate his child's affections.

{¶ 2}     We conclude that the trial court did not abuse its discretion in refusing to modify custody.   The court's decision is supported by the evidence and is not against the manifest weight of the evidence.   The trial court also did not err in relying on the report of the GAL.   The matters that Kiel challenges are minor or are issues pertaining to credibility, which the trial court was in the best position to judge.   Finally, the allegations pertaining to Amanda's attempts to alienate T.G.'s affection are outside the trial court record and may not be considered on appeal.   Accordingly, the judgment of the trial court will be affirmed.

## I.   Facts and Course of Proceedings

{¶ 3}     Kiel and Amanda were married in September 2005, and one child, T.G., was born of the marriage, in January 2006.   Amanda filed for divorce in May 2008, and received temporary custody of T.G.   In June 2008, the trial court also removed a temporary restraining order that had prevented Amanda from removing T.G. from the State of Ohio.   An initial child support order of $225 per month was reduced to $50 per month in September 2008, because Kiel

---

[1]Amanda Greenlee is now apparently known as Amanda Gentry.    For purposes of convenience, we will refer to the parties by their first names.

was unemployed. The final decree was filed in November 2009, and designated Amanda as T.G.'s residential parent and legal custodian. Kiel was given parenting time every other weekend from Friday at 6:00 p.m. to Sunday at 6:00 p.m. The parties were ordered to meet halfway between West Carrollton, Ohio, where Kiel lived, and Beattyville, Kentucky, where Amanda and T.G. lived. Child support of $50 per month was ordered.

{¶ 4}    In December 2012, Kiel filed a motion to modify custody. Kiel alleged that Amanda had brought T.G. to his residence in April 2011, and had notarized an affidavit giving him custody of T.G. Kiel had enrolled T.G. in West Carrollton schools, and T.G. then lived with Kiel for 19 months. However, Amanda failed to return T.G. after exercising parenting time during the 2012 Thanksgiving holiday.

{¶ 5}    A GAL was appointed in January 2013, and the matter was heard before a magistrate in July 2013. The GAL's report recommended that Amanda retain custody due to concerns over Kiel's prior history of violence toward Amanda, which was supported by the GAL's review of Kiel's criminal record in Miamisburg Municipal Court and discussions with both Kiel and Amanda. In addition, the GAL was concerned about Kiel's unemployment, failure to have a consistent employment record, and reliance on his parent's support. The GAL also concluded that Amanda did not intend to abandon her child, and that she was capable of caring for him.

{¶ 6}    The GAL attended the custody hearing and testified consistently with his report. He did indicate that the schools were probably better in West Carrollton than in Beattyville, but stated that T.G. was doing well in school. Furthermore, the GAL expressed concern about the fact that Amanda had three or four relationships since the divorce, had an additional child, had

left T.G. at his father's house in 2011, and was on welfare. The GAL stated that he would be concerned about what would happen to T.G. if something occurred regarding Amanda's situation with her current boyfriend. At the time of the hearing, T.G., Amanda, her boyfriend, Josh Gentry, and Josh's and Amanda's child, were all living together in a trailer in Beattyville, Kentucky.

{¶ 7}   On the other hand, the GAL had concerns about the violence that had occurred during the parties' marriage, although he did not see any risk to T.G. The GAL also expressed concern about Kiel's inconsistent work record and inability to support himself without the assistance of his parents. Accordingly, the GAL recommended that Amanda retain custody, with Kiel receiving extended summer visitation.

{¶ 8}   Kiel and his mother both testified at the hearing. Kiel stated that Amanda contacted him in April 2011, and indicated that she and her second husband, David Stamper, had separated. At the time, her parents would not let her live with them, and she was living out of her car. Amanda said she wanted to send T.G. up to Kiel because that would give T.G. a more stable environment. They agreed that if Amanda were not established by the end of the summer, they would sign a motion for custody so that Kiel could put T.G. in school. Amanda subsequently signed a motion agreeing to place custody with Kiel, and T.G. was enrolled in school in West Carrollton, where he did very well. In all, T.G. lived with Kiel and his parents for 19 months, until Amanda refused to return him in November 2012.

{¶ 9}   According to Kiel and his mother, Amanda did not visit T.G. very often, even though they encouraged her to do so either by paying for gas or by letting her stay overnight at their house. Over the 19-month period, Amanda visited T.G. only about eight times and did not

call often. During the 19 months that T.G. lived in West Carrollton, T.G. was very active in soccer, with Kiel being an assistant coach for the team. Kiel and his mother also indicated that while T.G. lived with them, Amanda continued to collect food stamps for T.G. At the time of the hearing, Kiel was approximately $1,691.94 in arrears in child support.

{¶ 10} Amanda and her boyfriend, Josh Gentry, also testified at the hearing. According to Amanda, she allowed Kiel to have T.G. in April 2011 to make up for visitation that Kiel claimed he had been denied during the divorce. After Amanda sent T.G. to live with his father, she decided that she wanted to pursue a career in the military, which she could not do if she had custody of T.G. As a result, Amanda signed a paper in August 2011, agreeing that Kiel could have custody. However, Kiel never filed the paper with the court, and by October 2011, Amanda had stopped speaking with the Army recruiter. At that point, Amanda wanted to take T.G. back to Kentucky, but Kiel refused.

{¶ 11} Subsequently, Amanda became involved in a relationship with Gentry, and found out in early January 2013 that she was pregnant. Amanda admitted that she had visited T.G. only about eight times over the 19-month period, but claimed it was because Kiel consistently denied her visitation. In addition, she said that she could not afford to come to the Dayton area. She also said she did not call very often because of Kiel's attitude toward her. Gentry described Kiel's attitude toward Amanda as sexually harassing, all the time. Gentry indicated that when Amanda attempted to call T.G., Kiel kept her on the phone for an hour or two before letting her speak with T.G. Sometimes he would not put T.G. on the phone at all, or would make a lot of sexual remarks.

{¶ 12} Amanda also expressed concern about Kiel's drinking and his disrespectful

attitude toward his own mother. She did say that she would not mind if T.G. spent most of the summer at his father's house. In addition, Amanda admitted that she had been stopped by the police in late 2010 or early 2011, when she had a Vicodin pill in her pocket. She stated that she had migraines, and that her father had given her the pill. However, she did not know it was Vicondin; she thought the pill was Ibuprofen. Amanda admitted that she had received a citation in the matter, but claimed the charge had been dismissed. She did not provide proof of this to the GAL or to the trial court. However, Kiel did not present evidence that Amanda had been convicted of any crime.

{¶ 13}  After hearing the evidence and conducting an in camera interview with T.G., the magistrate overruled Kiel's motion for custody, but did award Kiel extended visitation time in the summer. The magistrate ordered that summer parenting time would begin one week after school ended, and would extend to two weeks before school began for the next year.

{¶ 14}  Kiel filed objections to the magistrate's report, and the trial court overruled the objections in December 2013. Kiel now appeals from the decision overruling his motion for custody.

### III.  Did the Trial Court Abuse Its Discretion
### in Failing to Allow a Change of Custody?

{¶ 15}  Kiel's First Assignment of Error, quoted verbatim, states that:

The Trial Court Erred as a Matter of Law and Abused Its Discretion Against the Manifest Weight of the Evidence in Making a Finding that the Appellee Did Not Abandon the Minor Child with the Appellant and Making a

Finding Contrary to the Preponderance of the Evidence that the Appellee Did Not Intend to Sign over Custody to the Appellant. The Trial Court Abused Its Discretion When It Failed to Grant Appellant a Change in Custody Because of Finding that the Harm Likely to be Caused of [sic] Environment Outweighed the Advantages of the Change in Custody of the Child When the Evidence, as a Whole, Clearly Indicates that a Change in Custody is Necessary to Protect the Best Interest of the Child.

{¶ 16}    Although Kiel makes a number of statements in the assignment of error, his argument appears to be that the trial court's decision was not supported by the evidence and was against the manifest weight of the evidence.

{¶ 17}    Concerning custody modification, R.C. 3109.04(E)(1)(a) provides, in pertinent part, that:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

* * *

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

**{¶ 18}** "We review a trial court's ruling on a motion for reallocation of parental rights for an abuse of discretion." *Chaney v. Chaney*, 2d Dist. Montgomery No. 24880, 2012-Ohio-626, ¶ 9, citing *Musgrove v. Musgrove*, 2d Dist. Montgomery No. 24640, 2011-Ohio-4460, ¶ 7. " 'It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.' " *Id.* " 'A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.' " *Musgrove* at ¶ 8, quoting *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 19}** After reviewing the record, including the transcripts, exhibits, GAL's report, and the in camera interview with T.G., we cannot conclude that the trial court abused its discretion when it refused to modify the custody arrangement. The magistrate placed weight on two statutory factors in R.C. 3109.04(F) – (1) the fact that Kiel failed to make his required child support payments; and (2) the fact that Kiel had been convicted of misdemeanor child endangering involving T.G.

**{¶ 20}** Kiel argues that the trial court erred in finding that he was in arrears in support, because Amanda agreed to have child support terminated and reallocated to her. Kiel further maintains that it was Amanda's responsibility to have the order filed so that support would

terminate.

**{¶ 21}** We disagree. Kiel was the party benefitted by the proposed motion, and he should have filed it with the court. More importantly, however, the amount of support for the 19-month period would only have been around $950. Thus, a substantial amount of the $1,691.94 arrearage occurred when Kiel did not have custody of his child. Notably, the amount of monthly child support ordered ($50) was minimal – yet even that small amount was not regularly paid.

**{¶ 22}** Furthermore, the magistrate was correct in stressing that Kiel had been convicted of child endangering. The incident of endangering occurred in 2010, when T.G. was four-years old and had wandered away from the house. Kiel failed to call the police, and we agreed with the trial court that his actions were reckless and created a "strong possibility that his son would be harmed." *State v. Greenlee*, 2d Dist. Montgomery No. 24660, 2012-Ohio-1432, ¶ 15.

**{¶ 23}** In its decision, the magistrate stated that both parents had their issues and problems, but both were reasonably capable of positively parenting their son. Under these circumstances, the magistrate concluded that the benefits of a change of custody would be limited or non-existent, compared to the cost of the substantial disruption in T.G.'s life. The trial court agreed with the magistrate's assessment of the statutory factors in R.C. 3109.04(F), and so do we.

**{¶ 24}** The second issue raised by Kiel is a manifest weight challenge. In this regard, "[t]he weight of the evidence concerns ' "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other." ' (Emphasis

sic.)"  *Curtis v. Curtis*, 2d Dist. Montgomery No. 25211, 2012-Ohio- 4855,  ¶ 15, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12. (Other citations omitted.)  "In a review of the manifest weight of the evidence, 'every reasonable presumption must be made in favor of the judgment and the finding of facts.' "  *Id.*, quoting *Eastley* at ¶ 21. " ' "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment * * *." ' "  *Eastley* at ¶ 21, quoting  *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, which in turn quotes 5 *Ohio Jurisprudence 3d, Appellate Review,* Section 60, at 191-192 (1978).

**{¶ 25}**    In the case before us, the judgment is not against the manifest weight of the evidence.  As was noted, the magistrate expressed sound reasons for its decision, and those reasons are factually supported by the evidence.  Accordingly, the First Assignment of Error is overruled.

### III.   Did the Trial Court Err in Relying on the GAL Report and on Amanda's Testimony?

**{¶ 26}**    Kiel's Second Assignment of Error states that:

The Trial Court Erred as a Matter of Law When It Based Its Decision Not to Change Custody on a Report by GAL John Higgleman Who Was Not Only Biased and Unprofessional, but Found his Report Based Upon Testimony Alone of Appellee, Who Contradicted Her Testimony to Him, and the Trial Court Found This Fraudulent Report to be Credible.

**{¶ 27}** Under this assignment of error, Kiel contends that the GAL report was unreliable because it was solely based on Amanda's testimony. Kiel also contends that Amanda's statements during the investigation and her testimony at trial were not credible.

**{¶ 28}** As an initial point, we note that the GAL's report was not based solely on Amanda's testimony. The GAL talked to Kiel and his mother, and also checked the court system for information.

**{¶ 29}** Regarding Amanda's statements, one instance that Kiel mentions is that Amanda told the GAL in March 2013 that she was divorced from her second husband, David Stamper. In contrast, Amanda testified at the hearing that her divorce was final in April 2013. This is a minor discrepancy. The record indicates that Amanda had been separated from Stamper since early 2011, and that the delay in finalizing the decree occurred because Stamper left the state and she did not know where he was.

**{¶ 30}** Kiel also argues that Amanda deceived the GAL about not having a criminal record, when she, in fact, had been charged with possession of Vicodin. The report of the GAL indicates that Amanda told the GAL that she did not have a criminal record, and that when she was confronted about the felony drug charge alleged by Kiel, stated that she was never charged or convicted of such an offense. At the hearing, Amanda testified that her father had given her a Vicodin pill for a migraine, but that she thought the drug was Ibuprofen. When she was stopped for a traffic violation, she was given a citation for possession, but the charge was later dismissed. Accordingly, Amanda did not have a criminal record. If Kiel wished to present contrary evidence, he had access to public records involving Amanda's citation.

**{¶ 31}** As the trial court noted, both parties had issues and problems, but we cannot say

that the trial court erred in finding Amanda's explanation credible. We have stressed that "[a] trial judge is in the best position to observe the demeanor, attitude and credibility of each witness, and this is even more crucial in child custody cases." *Pellettiere v. Pellettiere*, 2d Dist. Montgomery No. 23141, 2009-Ohio-5407, ¶ 10, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

**{¶ 32}** Accordingly, the trial court did not err in relying on the report of the GAL, nor did the court err in crediting the testimony of Amanda. Kiel's Second Assignment of Error, therefore, is overruled.

### IV. Did the Trial Court Err in Asserting Jurisdiction When It Allegedly Knew of Amanda's Attempts to "Forum-Shop"?

**{¶ 33}** Kiel's Third Assignment of Error states as follows:

The Trial Court Erred to the Prejudice of Appellant Kiel Geenlee Both in Overruling His Objections and Making an Order Retaining Appellee Amanda L. Greenlee (Stamper, Gentry) the Custodial Parent of the Parties' Minor Child Against the Manifest Weight of the Evidence Presented Both at Trial and to the Court While on Objections, Which Error Was Contrary to Appellant's Right to Due Process and Equal Protection Under the Fifth and Fourteenth Amendments to the United States Constitution and Section 10, Article 1 of the Ohio Constitution.

**{¶ 34}** Under this assignment of error, Kiel appears to contend that Amanda took actions after the hearing and before the trial court ruled on its objections that were attempts to "forum-shop" and have jurisdiction over T.G. reside in Kentucky. These matters include

Amanda's filing of abuse allegations with Kentucky Child Protective Services, which allegations were found to be unsubstantiated; Amanda's motions to establish jurisdiction in the Lee County, Kentucky Circuit Court; and Amanda's motion and amended motion, also filed in the Lee County Court, seeking domestic violence protection orders. Allegedly, these requests for protection orders were based on the allegations that the Kentucky Child Protective Services had found to be unsubstantiated. Kiel maintains that he brought these matters to the trial court's attention, and that by refusing to modify custody, the trial court somehow aided Amanda in her attempts to alienate T.G. from Kiel.

{¶ 35} The matters Kiel mentions, if true, occurred after the evidentiary hearing, and are not part of the record in the trial court. We have repeatedly held that " '[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.' " *Taylor v. Taylor*, 2d Dist. Miami No. 2012-CA-16, 2013-Ohio-2341, ¶ 90, quoting *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. Any remedy for Kiel's allegations lies in the first instance with either the trial court or the courts in Kentucky.

{¶ 36} As an aside, we note that we have reviewed the entire record in this case, beginning with the initial filing of the complaint. Instead of conducting what should have been a simple divorce between two people with minimal assets and one child, the parties have engaged in unrelenting battle over minor points, with scant regard for the true welfare of their minor child. We stress that the lack of cooperation has not been confined to just one side. In a similar situation, we observed that:

Unfortunately, the course of events leading to the appeal represents an

extreme example of a recurring and regrettable tragedy in our society - the use of children as pawns in a war between divorced and embittered parents. Truly, such a war has no victors and the ultimate casualties are the children, who stand to suffer deeply and permanently unless their parents can learn to control their hostility and anger towards each other. We have previously emphasized, and stress once again, that children have certain rights, including " 'the right to love each parent, without feeling guilt, pressure, or rejection; the right not to choose sides; the right to have a positive and constructive on-going relationship with each parent; and most important * * * the right to not participate in the painful games parents play to hurt each other or to be put in the middle of their battles.' " *Bell v. Bell*, 2d Dist. Clark No. 97-CA-105, 1998 WL 288945, *1 (June 5, 1998), quoting *Thomas v. Freeland*, Greene App. No. 97-CA-06, 1997 WL 624331,*3 (Oct. 10,1997).

{¶ 37} The in camera interview indicated that T.G. loves both his parents and wanted to spend the school year with his mother and his summers with his father. This fact was noted in the trial court's decision, and both parents would do well to begin considering their child's wishes and needs rather than their own desire for revenge.

{¶ 38} Based on the preceding discussion, the Third Assignment of Error is overruled.


V. Conclusion

{¶ 39} All of Kiel's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and HALL, J.,    concur.

Copies mailed to:

Amanda L. Greenlee
Kiel T. Greenlee
Hon. Denise L. Cross