[Cite as *Gentry v. Silver Linings Agency*, 2024-Ohio-5503.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ANDINA GENTRY, | : | APPEAL NO. C-240036 |
| | | TRIAL NO.  A-2200060 |
| Plaintiff-Appellant, | : | |
| | | |
| vs. | : | |
| | | *O P I N I O N* |
| SILVER LININGS AGENCY, | : | |
| | | |
| CHANTIA GAINES, | : | |
| | | |
| and | : | |
| | | |
| CHANDRA DAVIS, | : | |
| | | |
| Defendants-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 22, 2024

*Ted L. Wills*, for Plaintiff-Appellant,

*Eberly McMahon Copetas LLC*, *Theodore C. Copetas* and *David A. Eberly*, for
Defendants-Appellees.

**Bock, Presiding Judge.**

{¶1} Plaintiff-appellant Andina Gentry appeals from the trial court's judgment denying her motion for partial summary judgment and granting summary judgment in favor of defendants-appellees Silver Linings Agency ("SLA")—Gentry's former employer—Chantia Gaines, and Chandra Davis (collectively, "Defendants").

{¶2} Gentry asserted that she witnessed criminal abuse and neglect of residents of a group home for girls run by Defendants, and that Defendants fired her after she raised those issues. Gentry sued under R.C. 2307.60, which permits crime victims to recover damages in a civil action. She asserted that Defendants engaged in two crimes against her: witness intimidation and obstruction of justice. Gentry also claimed that Defendants were unjustly enriched because she incurred expenses on Defendants' behalf and Defendants failed to reimburse her.

{¶3} The trial court properly granted summary judgment to Defendants on Gentry's R.C. 2307.60 claim involving witness intimidation. Gentry presented no evidence of an underlying criminal act committed by Defendants.

{¶4} Second, R.C. 2307.60 provides a cause of action only for crime victims. Because the "victim" in obstruction-of-justice crimes is the State itself, not an individual, the trial court correctly granted summary judgment on Gentry's R.C. 2307.60 claim alleging obstruction of justice.

{¶5} Finally, Gentry did not present any evidence of expenses she allegedly incurred, and she failed to move to compel Defendants to produce receipts in their possession. Accordingly, Defendants were entitled to summary judgment on Gentry's unjust-enrichment claim.

## I.    FACTS AND PROCEDURE

### A.  Facts

{¶6}    Gaines owned SLA, a nonprofit corporation operating private group homes for teenaged girls. SLA operated two facilities, one on Bluehill Drive and one on Shipley Avenue ("Shipley"). Davis, Gaines's mother, was a social worker and SLA's program director. Gentry worked for SLA beginning in early 2020 and eventually became the house manager at Shipley.

### 1.    Allegations of abuse and neglect

{¶7}    Gentry asserted that, during her employment, she observed abuse and neglect at SLA. She alleged that Defendants failed to provide the residents with adequate food, toilet paper, or clean clothes; failed to address a bed bug infestation; and tolerated inappropriate sexual comments made by another SLA employee.

{¶8}    Food: Gentry alleged that SLA did not provide enough food to the residents. She testified that SLA would "measure everything that the kids get." According to Gentry, "for breakfast, [SLA] would provide only one bowl of cereal. . . . For lunch, [SLA] allowed a sandwich, a little bag of chips, and milk or juice." She asserted that several residents complained of hunger. Gentry presented evidence that when staff complained to Gaines and Davis about the lack of food, they told the staff members to go out and buy additional food themselves.

{¶9}    Toilet paper: Gentry asserted that SLA failed to provide sufficient toilet paper for its residents. She pointed to an instance where she texted Gaines, "They are out of toilet paper at Shipley." Gaines responded that the residents had gone through three rolls of toilet paper in a day and SLA could not "support 3 rolls of toilet paper a day that's excessive." Gentry purchased toilet paper herself.

{¶10} <u>Clean clothes</u>: Gentry alleged that residents sometimes lacked clean clothes. The washing machines at one SLA location did not work properly for up to three months, requiring employees to take the residents to the other location, their homes, or laundromats to do laundry. One resident reported that another resident "would sit in the same unclean underwear."

{¶11} <u>Bed bugs</u>: Next, Gentry points to evidence that there were bed bugs at Shipley. When someone saw bed bugs on a couch, Gentry took the couch outside of the house. SLA hired an exterminator to treat the building. Later, another SLA employee, S.P., heard "at least two additional reports of bed bugs," but "[SLA] did not take any additional steps to have the facility treated." A resident reported that Gaines had stated that because the exterminators had just treated the building, they had to give the initial extermination treatment time to work.

{¶12} <u>Inappropriate sexual comments</u>: Finally, Gentry points to inappropriate sexual comments made by another SLA employee, L.M., to the residents. Gentry asserted that L.M. talked on the phone with her husband in the presence of SLA residents and, during the calls, made sexual comments to him. Further, Gentry said that L.M.'s husband made comments about some of the girls, saying that one resident "looked pretty and . . .  grown up" and he "wanted to 'freak' on" a resident. L.M. allegedly said that "she had been willing to let her husband do that because she would do anything for her marriage." Gentry asserted that L.M. went into a resident's room to talk about sex, told residents sexual stories, and described sexual positions to them.

{¶13} Gentry did not hear these comments firsthand; rather, the residents described these comments to Gentry after the fact. In response, Gentry texted Gaines that some of the residents wanted to speak to her—the text did not say why.

## 2. *ODJFS investigation*

{¶14} A resident reported the allegations about L.M. to her caseworker. The caseworker contacted Montgomery County Job and Family Services ("MCJFS") to report sexual abuse. According to Scott Gall, a licensing specialist with the Ohio Department of Job and Family Services ("ODJFS"), when a county agency like MCJFS receives reports of abuse, neglect, or dependency, it preliminarily investigates to determine whether the information provided "meets the [Ohio Administrative Code] definition of either abuse, neglect, or dependency." If the information meets one or more of those definitions, the county agency conducts a full investigation into the information. But if the information does not meet any of the definitions of abuse, neglect, or dependency, the county agency "screens out" the report and does no further investigation.

{¶15} MCJFS "screened out" the report about L.M. and her husband's conduct and did not investigate the matter. But, according to Gall, all reports, including those that are screened out, are forwarded to an ODJFS licensing specialist for investigation into whether the private group home violated any portion of the administrative code related to group home licensure. As he was the licensing specialist assigned to SLA, Gall received the report containing the allegations about L.M. and her husband.

{¶16} Shortly after he received the report, Gall notified SLA, informing it that he would investigate to determine if SLA had violated any rules. Gall spoke with L.M., the complaining resident, and other residents. Gall testified that Gentry was potentially a person he might have interviewed about the complaint.

### 3.    SLA fired Gentry

**{¶17}**  Gentry met Davis at SLA to talk with her about L.M.'s behavior. As Gentry was arriving, another SLA employee, S.P., was leaving and told Gentry that she had been fired.

**{¶18}**  In their meeting, Gentry told Davis what the residents had said about L.M. According to Gentry, Davis responded that the residents and Gentry were lying. Davis informed Gentry that SLA was terminating her employment for failure to report.

## B.  Procedural history

**{¶19}**  Gentry sued SLA, Gaines, and Davis, alleging that they had engaged in witness intimidation and obstruction of justice and were civilly liable to Gentry for that conduct. She further alleged that Defendants were unjustly enriched by SLA's failure to reimburse Gentry for expenses related to her employment.

**{¶20}**  Gentry sought partial summary judgment on her witness-intimidation and unjust-enrichment claims. Defendants moved for summary judgment on all claims. The trial court heard oral arguments on the motions, denied Gentry's motion, and granted Defendants' motion on all claims. Gentry appealed.

## II.    LAW AND ANALYSIS

## A.  Standard of review

**{¶21}**  This court reviews a trial court's summary-judgment ruling de novo. *Environmental Solutions & Innovations, Inc. v. Edge Eng. & Science, LLC.*, 2023-Ohio-2605, ¶ 6 (1st Dist.). Summary judgment must be granted where (1) there are no genuine issues of material fact; (2) the movant is entitled to judgment as a matter of law; and (3) when viewing the evidence most strongly in the nonmovant's favor, reasonable minds can come to but one conclusion and that conclusion is adverse to

6

the nonmovant. Civ.R. 56(C); *see M.H. v. City of Cuyahoga Falls*, 2012-Ohio-5336, ¶ 12.

**{¶22}** A summary-judgment movant has the initial burden of informing the court of the basis of the motion and identifying evidence in the "record which demonstrate[s] the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the movant satisfies this initial burden, the burden shifts to the nonmovant "to set forth specific facts showing that there is a genuine issue for trial." *Id.*; *see* Civ.R. 56(E). If the nonmovant fails to carry this burden, summary judgment should be granted. *Environmental Solutions & Innovations, Inc.* at ¶ 7.

**{¶23}** A court may not weigh the evidence or choose between reasonable inferences on summary judgment, as the "purpose of summary judgment 'is not to try issues of fact, but rather to determine whether triable issues of fact exist.'" *Id.*, quoting *Walker v. Hodge*, 2008-Ohio-6828, ¶ 19 (1st Dist.).

### B. R.C. 2307.60 Civil Liability for Criminal Acts

**{¶24}** R.C. 2307.60 "creates a statutory cause of action for damages resulting from any criminal act." *Jacobson v. Kaforey*, 2016-Ohio-8434, ¶ 10. The statute authorizes any person "injured in person or property by a criminal act" to bring a civil suit for damages. R.C. 2307.60(A). A plaintiff asserting a claim under R.C. 2307.60 does not have to show that the defendant was convicted of a crime to prevail; rather, the plaintiff only needs to establish a "criminal act" and the plaintiff's resulting damages. *Buddenberg v. Weisdack*, 2020-Ohio-3832, ¶ 11. To succeed on an R.C. 2307.60 claim, a plaintiff must provide evidence on each element of the underlying criminal act and the plaintiff's damages resulting from that act. R.C. 2307.60(A).

7

### C. *Assignments of Error*

**{¶25}** In her first and second assignments of error, Gentry argues that the trial court erred in denying her summary judgment and granting Defendants summary judgment on her R.C. 2307.60 claim based on witness intimidation.

### 1. <u>Witness intimidation</u>

**{¶26}** Gentry asserts that she was a victim of witness intimidation. Relevant to this case, R.C. 2921.04(A) provides that no person shall "knowingly attempt to intimidate a witness to a criminal or delinquent act by reason of the person being a witness to that act." Thus, Gentry must show that she witnessed an underlying criminal act, and that Defendants intimidated her because she witnessed that underlying criminal act.

**{¶27}** Under the intimidation statute, a "witness" is "any person who has or claims to have knowledge concerning a fact or facts concerning a criminal or delinquent act, whether or not criminal or delinquent child charges are actually filed." R.C. 2921.04(E).

### a. <u>Underlying Act Must Be Criminal</u>

**{¶28}** A person may qualify as a "witness" even if no criminal charges are filed, but the plain language of R.C. 2921.04 requires that the person be a "witness" to an actual "criminal or delinquent act."

**{¶29}** Gentry alleged that she witnessed the criminal acts of "abuse" and "neglect." Gentry cites the incorrect standard for what constitutes *criminal* abuse or neglect in Ohio. She cites R.C. 2151.03, which defines a "neglected child." But that definition only applies to actions in the juvenile court system. *See* R.C. 2151.03(A) ("*As used in this chapter*, 'neglected child' includes . . . ."). Gentry similarly cites R.C.

2151.031 to define an "abused child," a definition that does not apply to criminal statutes. *See* R.C. 2151.031 ("*As used in this chapter*, an 'abused child' includes. . . ."). Neither statute carries criminal penalties and both statutes' definitions are limited to R.C. Ch. 2151. Accordingly, several of Gentry's arguments about alleged abuse and neglect rely on administrative regulations and juvenile statutes that are inapplicable in a criminal proceeding.

{¶30} Ohio has criminalized the abuse or neglect of a child under R.C. 2919.22, Ohio's child-endangerment statute. *See* 1974 Committee Comment to R.C. 2919.22 ("This section is aimed at child neglect and abuse which causes or poses a serious risk to the mental or physical health or safety of the victim."). But the conduct necessary for an act to qualify as "criminal" under R.C. 2919.22 is different from conduct constituting neglect or abuse under R.C. Ch. 2151, used by the juvenile courts when determining child custody and safety matters.

{¶31} To demonstrate that Defendants committed criminal neglect, Gentry would have to produce sufficient evidence from which a reasonable person could find that Defendants violated R.C. 2919.22(A), which provides that no person "who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age . . . shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." A "substantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). Recklessness is the required mental state for child endangering. *State v. O'Brien*, 30 Ohio St.3d 122, 124 (1987). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and

unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

**{¶32}** Likewise, to demonstrate that Defendants committed criminal abuse, Gentry would have to produce sufficient evidence from which a reasonable person could find that Defendants violated R.C. 2919.22(B)(1), which prohibits child abuse. "Abuse" is not defined under the statute, but this court has held that a jury instruction, premised on R.C. 2151.031(D) and defining child abuse as "'an act which causes physical or mental injury that harms or threatens to harm the child's health or welfare' . . . was an appropriate statement of the law as it relates to the misdemeanor offense described in R.C. 2919.22(B)(1)." *State v. Groomes*, 2010-Ohio-4311, ¶ 12-13 (1st Dist.); *accord State v. Johnson-Millender*, 2005-Ohio-4407, ¶ 44 (5th Dist.).

**{¶33}** Thus, to show an underlying criminal act, Gentry had to produce evidence demonstrating that Defendants' conduct either caused an injury "that harms or threatens to harm the child's health or welfare" or, by an omission of care, created "a substantial risk to the health or safety of the child."

    b.  <u>No evidence exists demonstrating a substantial risk to the residents</u>

**{¶34}** Defendants' conduct that Gentry claims constitutes child abuse or neglect includes failing to (1) provide adequate food, (2) provide adequate toilet paper, (3) provide clean clothing, (4) eradicate a bed bug infestation, and (5) address inappropriate "sex talk" from an SLA employee. Each of these allegations relate to Defendants' failure to act or conform to the standard of care and fall under R.C. 2912.22(A)'s prohibition against neglect, rather than child abuse under R.C. 2919.22(B). *State v. Kamel*, 12 Ohio St.3d 306, 309 (1984) ("neglect is characterized by acts of omission.").

{¶35} To witness child neglect, Gentry must have known, or claimed to have known, that Defendants violated a duty of care that created a "substantial risk to the health or safety of the" residents. R.C. 2919.22(A). None of Defendants' alleged omissions amount to criminal conduct prohibited under the child-endangerment statute.

{¶36} As to lack of food, the only evidence Gentry witnessed was that some of the children living at SLA would complain about not having enough to eat, and that Defendants would measure the food given to the children. Gentry points to testimony of another SLA employee that "for breakfast, [SLA] would provide only one bowl of cereal . . . . For lunch, [SLA] allowed a sandwich, a little bag of chips, and milk or juice." But there are no allegations that any of the residents went a significant period without food, suffered from malnutrition, or were at a substantial risk of experiencing malnutrition. This evidence fails to establish criminal neglect.

{¶37} Likewise, Gentry did not present evidence of a criminal act related to the alleged lack of toilet paper. Gentry testified that when she told Gaines that the facility was out of toilet paper, Gaines responded, "I'm sorry we can't support 3 rolls of toilet paper a day." Because of the shortage of toilet paper, other SLA employees purchased toilet paper themselves. After an employee notified SLA about a lack of toilet paper, Davis brought additional toilet paper within two hours. Again, there is no evidence that any resident faced a substantial risk to her health or safety because of the lack of sufficient toilet paper, and Gentry's own evidence suggests that SLA employees addressed the issue.

{¶38} Gentry alleged that Defendants failed to provide clean clothes, pointing to evidence that the washing machines at a SLA location were broken. During this

11

time, employees took the laundry to the other SLA location, employee homes, or laundromats. Though Gentry points to evidence that a resident at times lacked clean underwear, she fails to point out evidence of a *substantial risk* to the children's health and safety.

{¶39} Next, Gentry presented evidence that a couch at the Shipley location had beg bugs. SLA hired an exterminator to treat the facility, and the issue initially resolved. Gentry stated that after the bed bugs were initially resolved, other residents reported that the bed bugs were still present, and SLA failed to remedy the situation. A resident stated in her deposition that Gaines informed them that they had to give the initial extermination treatment more time to work.

{¶40} Gentry's evidence does not show that *she* knew or claimed to know that Defendants failed to address additional outbreaks. Her reference to the beg bug infestation in her deposition was brief, and her text messages to Defendants only referenced the initial outbreak. While Gentry's evidence reveals or suggests that *other individuals* knew of an additional unaddressed beg bug outbreak, that is insufficient to show that *Gentry* knew or claimed to know of Defendants' failure to remedy the subsequent outbreaks.

{¶41} The evidence on which Gentry relies—that Defendants told the residents they needed to wait a period of time to determine if the initial extermination treatment had succeeded—does not amount to endangerment. Neglect cases under R.C. 2912.22(A) typically involve caretakers' failure to seek medical attention for a life-threatening injury, *State v. Boyd*, 2020-Ohio-3450, ¶ 27 (8th Dist.) (subdural hematoma), *State v. Ritchie*, 2018-Ohio-4256, ¶ 18 (12th Dist.) (severe burns); or take action in response to a report of active sexual abuse, *State v. Wood*, 2008-Ohio-4992,

¶ 63 (5th Dist.). Our research has located no cases stating that an unsuccessful attempt to remove bed bugs from a home constitutes criminal neglect. Gentry failed to show that the bed bug infestation constituted a criminal offense.

{¶42} Gentry's last example of alleged neglect is Defendants' failure to respond to inappropriate statements made by SLA employee L.M. Ohio courts have held that a caregiver allowing a child to be exposed to a known threat of sexual abuse constitutes neglect in violation of R.C. 2919.22(A). *See Wood*, 2008-Ohio-4992, at ¶ 62-63 (8th Dist.) (holding that a parent violated a duty of care to her daughters, creating a substantial risk to them, where she was aware of allegations that her husband, who had been previously accused of molesting his daughters, was abusing her daughter and took no action); *see also State v. Jay*, 2009-Ohio-4364, ¶ 17 (8th Dist.) (parent endangered minor son where minor son witnessed the parent sexually abuse his sibling). But unlike those cases, Gentry has not alleged that the Defendants ignored a credible report of active or imminent sexual abuse.

{¶43} Gentry's evidence and factual allegations do not support a finding of child neglect. While the statements allegedly made by L.M. and her husband are inappropriate, Gentry did not report the statements to Defendants. Gentry testified that the only actions she took were texting Gaines and Davis to tell them that one or more of the girls needed to speak with them. To constitute child neglect, defendants must be aware of either a credible threat of abuse or actual ongoing abuse and fail to act. *See Wood* at ¶ 62-63. But here, there is no evidence that Gentry communicated to any of the Defendants what L.M. and her husband said to or about the girls. And without Defendants knowing about the inappropriate sexual comments, Gentry

13

cannot show that Defendants ignored a substantial risk of sexual abuse by L.M. or her husband.

**{¶44}** Gentry was not a witness to criminal abuse or neglect because she failed to establish an underlying criminal act. And because Gentry's evidence did not establish a criminal act, we overrule her first and second assignments of error.

## 2. **Obstruction of justice**

**{¶45}** In her third assignment of error, Gentry argues that the trial court erred in granting Defendants summary judgment on her R.C. 2307.60 claim involving obstructing justice.

**{¶46}** Like her witness-intimidation claim, Gentry's obstructing-justice claim was raised under R.C. 2307.60 and required evidence establishing the elements of obstructing justice as well as damages proximately caused by the crime.

**{¶47}** Ohio's obstructing-justice statute provides:

No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime or to assist another to benefit from the commission of a crime . . . shall do any of the following:

. . .

(5) Communicate false information to any person.

(6) Prevent or obstruct any person, by means of force, intimidation, or deception, from performing any act to aid in the discovery, apprehension, or prosecution of the other person or child.

R.C. 2921.32(A)(5)-(6).

{¶**48**}  Assuming that any of the Defendants attempted to obstruct justice, Gentry was not the "victim" of that act.

{¶**49**}  R.C. 2307.60(A) creates a cause of action for a person "injured in person or property by a criminal act." In other words, the statute permits only a crime victim to sue the person who committed the crime. *E.g., Jacobson*, 2016-Ohio-8434, at ¶ 37-39 (Kennedy, J., concurring) (referring to R.C. 2307.60 plaintiffs as "crime victims").

{¶**50**}  Gentry could not have been a victim of obstruction of justice. The victim in obstruction-of-justice cases is the State, not an individual. Obstructing justice falls under R.C. Ch. 2921, which "criminalizes offenses committed against justice and public administration." *State v. Steele*, 2013-Ohio-2470, ¶ 18. That chapter "was separately enacted within Ohio's criminal code to focus on the special societal ills created by improper interference in the administration of justice or the discharge of a public duty." *Id.* A person who obstructs justice hinders *the State* from discovering, apprehending, prosecuting, convicting, or punishing a person for a crime. *See State v. K.S.*, 2022-Ohio-365, ¶ 12 (9th Dist.) ("Further, the crime of obstructing justice, pursuant to R.C. 2921.32(A)(5), does not include language regarding a victim.").

{¶**51**}  Because the State is the victim of the criminal act of obstructing justice, not an individual, Gentry cannot have been injured in person or property based on Defendants' alleged obstruction of justice.

{¶**52**}  Even if Gentry could have been a victim of obstructing justice, "[t]he crime of obstructing justice cannot be committed without the commission of an underlying crime by another." *State v. Bronaugh*, 69 Ohio App.2d 24, 25 (1st Dist. 1980). Gentry's obstructing-justice claim is premised on the same allegations of child abuse and neglect underlying her witness-intimidation claim. For the reasons

explained above, Gentry failed to present any facts rising to the level of criminal child abuse and neglect. Defendants were entitled to judgment as a matter of law on Gentry's R.C. 2307.60 claim involving obstructing justice.

**{¶53}** We overrule Gentry's third assignment of error.

### 3. Unjust enrichment

**{¶54}** In her fourth and fifth assignments of error, Gentry argues that the trial court erred in denying her summary-judgment motion, and granting Defendants' summary-judgment motion, on Gentry's unjust-enrichment claim.

**{¶55}** Gentry's unjust-enrichment claim arose from her purchases of supplies for SLA and food for the residents, and Defendants' failure to reimburse her for those expenses.

**{¶56}** To support an unjust-enrichment claim, Gentry needed to establish that (1) she conferred a benefit on Defendants, (2) Defendants knew of that benefit, and (3) Defendants retained the benefit in circumstances where not paying Gentry would be unjust. *Gilman v. Physna, LLC*, 2021-Ohio-3575, ¶ 28 (1st Dist.).

**{¶57}** We agree with Defendants' assertion that Gentry did not produce receipts or other evidence demonstrating that she made purchases for Defendants' benefit. Moreover, Gentry did not suggest that she sought reimbursement from SLA before her employment ended.

**{¶58}** Gentry asserts that she placed receipts for the items in SLA's office and Defendants failed to produce them in discovery. In her deposition, Gaines testified that Defendants never found a folder with Gentry's receipts. While another SLA employee saw the receipts, she had no firsthand knowledge as to whether Gaines received the receipts.

16

**{¶59}** Gentry asserts that the trial court should have drawn a negative inference against Defendants based on their failure to provide the receipts in discovery. Civ.R. 37(B) allows a trial court to impose sanctions when a party fails to comply with court orders involving discovery. One such sanction is directing that "designated facts shall be taken as established" as proposed by the party seeking discovery. Civ.R. 37(B)(1)(a); *see Signs v. Ohio Dept. of Rehabilitation & Correction*, 1994 Ohio App. LEXIS 5293, *5 (10th Dist. Nov. 22, 1994) ("where there is relevant evidence under the control of a party who fails to produce it without satisfactory explanation, the trier of fact may draw an inference that such evidence would be unfavorable to the party failing to produce such evidence.").

**{¶60}** Gentry is not entitled to any negative inference. She did not move to compel Defendants to produce the receipts, so Defendants did not disobey a court order. As such, Civ.R. 37(B) does not apply. Moreover, while Gentry produced evidence that another employee claimed to have found some unidentified receipts, that does not demonstrate the *Defendants* wrongly withheld evidence.

**{¶61}** Additionally, although Gentry produced a bank statement with transactions highlighted purportedly showing purchases she made for Defendants, the date on that statement did not line up with when she asserted she was entitled to reimbursement. Moreover, Gentry was unable to specifically state the purpose for any of the transactions reflected in her bank statement. Finally, the bank statement was meant to show examples of what Gentry had purchased, not the actual transactions.

**{¶62}** The trial court correctly granted summary judgment to Defendants on Gentry's unjust-enrichment claim. We overrule Gentry's fourth and fifth assignments of error.

### III.   <u>Conclusion</u>

**{¶63}**   We overrule Gentry's assignments of error and affirm the trial court's judgment.

Judgment affirmed.

**CROUSE** and **WINKLER, JJ.,** concur**.**

Please note:

The court has recorded its entry on the date of the release of this opinion.